I agree with the majority's finding that a person who retires prior to the diagnosis of asbestosis is not entitled to benefits pursuant to § 97-61.5(b). See Austin v. Continental General Tire,141 N.C. App. 397, 540 S.E.2d 824 (2000) (J. Greene, dissenting),reversed and adopting dissenting opinion, 354 N.C. 344, 553 S.E.2d 680
(2001); Abernathy v. Sandoz Chemicals, 151 N.C. App. 252, 565 S.E.2d 218,review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). The prerequisites for an order of removal under § 97-61.5(b) are:
(1) Diagnosis of asbestosis or silicosis; and
 (2) Current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
N.C. Gen. Stat. § 97-61.5(b); see Austin, supra; Abernathy, supra.
The award of 104 weeks requires that plaintiff additionally prove a third element:
 (3) That the employee is removed from the industry at the directive of the Commission.
Moore v. Standard Mineral Company, 122 N.C. App. 375, 469 S.E.2d 594
(1996); Clark v. ITT Grinnell, 141 N.C. App. 417, 539 S.E.2d 369,remanded for reconsideration in accordance with Austin, 354 N.C. 572,558 S.E.2d 867 (2002); N.C. Gen. Stat. § 97-61.5(b). Because plaintiff has failed to establish each of the three requirements, I agree that § 97-61.5(b) benefits should not be awarded in this case.
 Diagnosis of Asbestosis
I disagree with the majority's conclusion that plaintiff has asbestosis. Although "asbestosis" is statutorily defined as "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust," N.C. Gen. Stat. § 97-62, asbestosis is a medical condition that is to be determined by current, medically accepted standards of diagnosis. The North Carolina Workers' Compensation Act places the burden on the plaintiff to establish that his claim is compensable by a preponderance of the competent evidence. In a similar fashion the medical standards for a differential diagnosis require that the physician have all available medical evidence necessary to make the diagnosis and that the doctor consider and be able to preclude other potential causes for the disease or condition. See Westberry v. GislavedGummi, 178 F.3d 257 (4th Cir. 1999).
In this case, the ultimate question is whether plaintiff's abnormal radiographic lung findings are a result of his heart condition, or whether these are findings of asbestos-related disease. Because interstitial abnormalities can be caused by both asbestos exposure and heart disease, it is important in this action to look at each of these conditions in determining whether plaintiff's death is the result of asbestos-related disease.
There is no question that plaintiff has unrelated cardiovascular disease which includes an enlarged heart (cardiomegaly), arteriosclerosis (hardening of the arteries), and occulsion of the aorta and the vessels that supply oxygen to the heart. In 1997, plaintiff was treated for coronary artery disease, chronic congestive heart failure, chronic obstructive pulmonary disease[1] (COPD), and hypertension. Because plaintiff had reported a history of asbestos exposure, a CT Scan was performed in conjunction with this hospitalization. Dr. Ailstock from Eastern Radiologists in Greenville, North Carolina, interpreted plaintiff's CT Scan to show an enlarged heart (cardiomegaly) and bilateral pleural effusions. Dr. Ailstock interpreted the pulmonary abnormalities to be related to congestive heart failure rather than suspected asbestos disease.
Carolina Chiles, a radiologist and certified B-Reader selected by plaintiff's counsel, was requested to and reviewed a chest x-ray taken in August 1997. Dr. Chiles explained that the film revealed a profusion level of 1/1 and that there was evidence of pleural thickening. Although Dr. Chiles explained that these are findings that one would look for with asbestos-related disease, she also testified that edema produced by congestive heart failure could be read as fibrosis on x-ray. Dr. Chiles admitted that plaintiff had congestive heart failure and also concluded that the pleural thickening was not consistent with the location in the lungs that would be associated with asbestos-related disease. Dr. Chiles also reviewed a CT Scan performed in July 1997, and concluded that this study was more consistent with congestive heart failure and that there was no evidence of asbestosis. Dr. Chiles explained that the radiographic study revealed cardiomegaly, pulmonary edema, and pleural effusions that were most likely caused with congestive heart failure.
Dr. Lucas and Dr. Dula reviewed some of plaintiff's radiology studies at the request of plaintiff's counsel. They testified that the studies they reviewed are consistent with asbestosis. These gentlemen, however, are radiologists, and Dr. Dula concedes that the diagnosis of asbestosis is in the realm of a pulmonologist. A radiologist is not the proper physician to make the differential diagnosis of asbestosis. Further, neither of these doctors was provided with complete medical records, or sufficient medical records to allow them to properly provide a differential diagnosis to separate congestive heart failure from asbestosis. In particular, Dr. Lucas was not provided with plaintiff's medical records for his 1997 admission for congestive heart failure, and more significantly, was not provided with Dr. Chiles' report for the CT Scan wherein she concluded that there was no evidence of asbestosis and plaintiff's radiographic findings were consistent with congestive heart failure. Unusual to this case is the fact that Dr. Dula, who performs numerous B-reads for plaintiffs, did not perform B-reads on the films provided for his review. A change in profusion ratings on the different films he reviewed would be beneficial to differentiate asbestosis from congestive heart failure. Yet, in this case Dr. Dula was not requested to perform the B-reads and did not compare the radiographic studies to the ILO standards for diagnosing asbestosis. Dr. Dula opined that the x-rays were consistent with asbestosis, however, did not read the films to the ILO standard applicable to this diagnosis. Further, even Dr. Dula conceded that with evidence of a large heart (cardiomegaly) and evidence of heart failure he would agree that the pleural effusions exhibited on the x-rays would be more consistent with heart failure than asbestosis. Because these physicians were not given full information to provide an adequate differential diagnosis, together with the fact that they are not the appropriate physician to provide the diagnosis, their opinions that plaintiff's condition is consistent with asbestosis is not competent evidence that plaintiff has asbestosis rather than congestive heart failure. See Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Seealso Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). A radiographic finding "consistent with asbestosis" would give reason to rule out this condition, however, it is not relevant evidence[2] that establishes that plaintiff more likely than not has asbestosis. See Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard).
Further, Dr. Sorrell's testimony does not assist the trier of fact in determining whether plaintiff's radiographic abnormalities are evidence of asbestosis or heart failure. All of Dr. Sorrell's testimony is premised on the assumption that plaintiff has a valid diagnosis of asbestosis. Dr. Sorrell, a cardiologist, testified that he is not qualified to diagnosis asbestosis and relied upon limited medical records provided for his review by plaintiff's counsel and counsel's representation that plaintiff had severe asbestosis. Dr. Sorrell testified that if the diagnosis of asbestosis is correct then the reduction in oxygen transfer caused by the disease was a contributing factor to plaintiff's heart attack and death. Dr. Sorrell also testified, however, that if plaintiff does not have asbestosis, then his death was not caused by lung disease. Dr. Sorrell's testimony does not attempt to address whether plaintiff has a compensable disease to his lungs; thus, his opinions are not relevant to the issue before the Commission and thereby is not legally competent evidence to support the majority's conclusion that plaintiff has asbestosis. Dr. Sorrell's testimony does not allow the trier of fact to determine that plaintiff has asbestosis that contributed to his death. Although Dr. Sorrell relied on the assumption that plaintiff had asbestosis, he noted that his review of the radiology studies did not reveal the things that he would expect to find in a person with asbestosis. Moreover, Dr. Sorrell testified that plaintiff had severe heart disease, a history of congestive heart failure, and a history of at least one prior heart attack. Further, Dr. Sorrell testified that plaintiff died from a heart attack that was caused by a blocked, or occluded, coronary artery. This could have been caused by plaintiff's pre-existing cardiovascular disease, including his congestive heart failure, arteriosclerosis, and cardiomegaly. On the question of what happened to plaintiff and whether he actually has asbestosis and, if so, whether it contributed to plaintiff's heart attack and death, Dr. Sorrell ultimately testified: "I just don't know." Thus, Dr. Sorrell's testimony is not competent evidence as to plaintiff's medical condition and the cause of his heart attack and death. See Youngv. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271
(1983) (mere possibility does not satisfy requisite standard).
As explained above, the evidence is undisputed that plaintiff had severe cardiovascular disease including an enlarge heart (cardiomegaly), arteriosclerosis, occlusions to the aorta and the vessels that supply oxygen to the heart, and congestive heart failure. Dr. Sorrell, the cardiologist, testified that plaintiff died from a heart attacked caused by a blocked coronary artery. Plaintiff's cardiovascular condition alone can explain plaintiff's heart attack and death. Although asbestosis, if present, may contribute to the deprivation of oxygen to the heart and thereby be a factor in his death, plaintiff's death is not evidence that he had asbestosis. Further, in this particular circumstance the radiographic findings that "are consistent with asbestosis" are not relevant evidence of asbestosis because the radiographic signs of fibrosis and pleural thickening are also evidence of congestive heart failure. Further, Dr. Chiles, Dr. Dula, and Dr. Sorrell provide testimony that plaintiff's radiographic studies are more consistent with congestive heart failure than asbestosis. Neither Dr. Dula, Dr. Lucas, nor Dr. Sorrell negate the probability that plaintiff had congestive heart failure with occlusion to his coronary arteries which precipitated his fatal heart attack.
I, therefore, respectfully dissent because the evidence the majority has chosen to rely upon is not competent and relevant to the issues presented in this case. Smith v. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___, 2002 WL 32058428 (2002) (motion to publish granted) (Industrial Commission must determine whether evidence is competent and weigh the competent evidence); see Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills,65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard). Plaintiff has not established by competent evidence that he has asbestosis.
 Unfounded Litigiousness
As noted above, this case includes numerous legal issues on which the parties, including defendant, have a right to a ruling by the Commission and subsequently by the Courts. Pursuant to § 97-86 the Full Commission is the ultimate trier of fact and this case involves factual and legal questions that require our review. This is illustrated by the fact that even the majority opinion of the Full Commission differs from the conclusions of the deputy commissioner. Thus, plaintiff's claim for attorney's fees pursuant to § 97-88.1 must be denied. See Shaw v.United Parcel Service, 116 N.C. App. 598, 449 S.E.2d 50 (1994), aff'd perCuriam, 342 N.C. 189, 463 S.E.2d 78 (1995).
 Death Benefits
The majority correctly found that plaintiff was not entitled to benefits pursuant to § 97-61.5(b); therefore, § 97-61.6 is not relevant to this action. Rather, the issue of death benefits, if otherwise proper in this case, is governed by § 97-38 et seq.
Pursuant to § 97-39 the surviving widow is presumed to be dependent on the deceased plaintiff. Under § 97-38, the dependent is entitled to the benefits. No survivorship benefits are awarded, therefore, the estate and the widow in her capacity as executrix are not entitled to benefits. If benefits are due, and they are not, the benefits are due solely to the surviving widow in her capacity as the dependent of the plaintiff-decedent.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
[1] Note that asbestos is associated with restrictive, rather than obstructive lung disease.
[2] Under Rule 401 of the North Carolina Rules of Evidence, "relevant evidence" is defined as evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In other words, relevant evidence tends to establish that a contested fact is more, or less, likely.