Having reviewed all of the competent evidence presented to the Full Commission, I respectfully disagree with the majority's finding that plaintiff has asbestosis and the majority decision to remand this case to reconsider an order of removal and payment of 104 weeks of benefits under an estoppel theory.
 REMOVAL AND 104 WEEKS OF BENEFITS PURSUANT TO § 97-61.5(b)
The prerequisites for an order of removal under § 97-61.5(b) are:
Diagnosis of asbestosis or silicosis; and
 Current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
N.C. Gen. Stat. § 97-61.5(b); see Austin v. Continental GeneralTire, 141 N.C. App. 397, 540 S.E.2d 824 (2000) (J. Greene, dissenting),reversed and adopting dissenting opinion, 354 N.C. 344, 553 S.E.2d 680
(2001); Abernathy v. Sandoz Chemicals, 151 N.C. App. 252, 565 S.E.2d 218,review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). The award of 104 weeks requires that plaintiff additionally prove a third element:
 That the employee is removed from the industry at the directive of the Commission.
Moore v. Standard Mineral Company, 122 N.C. App. 375, 469 S.E.2d 594
(1996); Clark v. ITT Grinnell, 141 N.C. App. 417, 539 S.E.2d 369,remanded for reconsideration in accordance with Austin, 354 N.C. 572,558 S.E.2d 867 (2002); N.C. Gen. Stat. § 97-61.5(b). Because the evidence fails to establish each of the three requirements, §97-61.5(b) benefits should not be considered in this case and the remand to consider an estoppel theory is not warranted.
 PLAINTIFF DOES NOT HAVE ASBESTOSIS
I disagree with the majority's conclusion that plaintiff has asbestosis. "Asbestosis" is statutorily defined as "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust." N.C. Gen. Stat. § 97-62. Moreover, asbestosis is a medical condition that is to be determined by current, medically accepted standards of diagnosis. The medically accepted standards for the diagnosis of asbestosis are contained in The Diagnosis of NonmalignantDiseases Related to Asbestos, 134 American Review of Respiratory Disease
363 (Adopted by American Lung Association, March 1986). The North Carolina Workers' Compensation Act places the burden on the plaintiff to establish that his claim is compensable by a preponderance of the competent evidence. In a similar fashion the medical standards for a differential diagnosis require that the physician have the medical evidence necessary to make the diagnosis and that the doctor consider and be able to preclude other potential causes for the disease or condition.See Westberry v. Gislaved Gummi, 178 F.3d 257 (4th Cir. 1999).
The American Thoracic Society has determined that the diagnosis of "asbestosis" is a judgment based on a careful consideration of all relevant clinical findings. The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). According to the American Thoracic Society, the diagnosis of asbestosis requires:
A reliable history of exposure, and
 An appropriate time interval between exposure and detection, with[1]
 Chest roentgenographic evidence of type "s," "t," "u," small irregular opacifications of a profusion of 1/1 or greater,
 A restrictive pattern of lung impairment with a forced vital capacity below lower limit of normal,
 A diffusing capacity below the lower limit of normal, and/or
 Bilateral late or pan inspiratory crackles at the posterior lung bases not cleared by cough.
The American Thoracic Society (ATS) acknowledged that interstitial fibrosis might be present without any of the other criteria (items 3 through 6, above); however, the ATS stated that a clinical diagnosis could not be made without the other criteria. Id.
The competent medical evidence does not support a finding that plaintiff has asbestosis. First, plaintiff's x-rays do not establish asbestosis in accordance with the American Thoracic Society standard. Dr. Bernstein performed a B-read on plaintiff's August 1999 x-ray and found a profusion rating of 1/0, which is less than the minimum 1/1 standard accepted by the American Thoracic Society. Dr. Grauel also read this study to reveal a 1/0 profusion rating. Similarly, Dr. Dula interpreted plaintiff's October 1997 x-ray to have a 1/0 profusion rating. Dr. Hayes read the 1997 study as 0/1 and the 1999 study as 1/0; again below the minimum 1/1 requirement. In addition, Dr. Grauel, Dr. Bernstein, and Dr. Hayes indicate that there were no pleural abnormalities consistent with pneumoconiosis. Dr. Dula reported increased thickening of the pleura, however, Dr. Hayes explained that this was probably secondary to moving the pleura in the course of plaintiff's coronary by-pass surgery. Second, plaintiff's pulmonary function studies have not exhibited restrictive disease.[2] Dr. Rostand reported that plaintiff had a normal diffusion capacity. The High Point Regional Health Systems pulmonary function testing performed in December 1998 reported no restrictive ventilatory defect. Similarly, the pulmonary function testing performed at Pitt County Memorial Hospital in December 1997 revealed no restriction. The results of plaintiff's x-rays, physical examinations, and pulmonary testing do not support the conclusion that plaintiff has asbestosis.
Our duty is to decide the case on the evidence. In performing this function, the Commission must look beyond the suppositions of the physicians and determine whether their opinion is based on sound medical judgment. Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Smith v. Beasley Enterprises, 577 S.E.2d 902 (2002) (Industrial Commission must determine whether evidence is competent and weigh the competent evidence); see Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills,65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard). The evidence cited by the majority does not support the conclusion that plaintiff has asbestosis. For example, the majority cites physician conclusions that plaintiff has conditions that are "consistent with" asbestosis.[3] The majority has failed to set forth facts that are in evidence to establish a diagnosis based on the medically accepted standard for diagnosis adopted by the American Thoracic Society. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Seealso Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). A radiographic finding "consistent with asbestosis" would give reason to consider this potential diagnosis, however, it is not relevant evidence[4] that establishes that plaintiff more likely than not has asbestosis. See Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271
(1983) (mere possibility does not satisfy requisite standard). And, without x-rays showing a profusion rating equal to or greater than 1/1 with evidence of restrictive disease or other findings expressed in the American Thoracic Society standard, quoted above, the conclusions of the physicians that plaintiff has asbestosis are bald statements insufficient to support the findings of fact. Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Smith v. Beasley Enterprises,577 S.E.2d 902 (2002) (Industrial Commission must determine whether evidence is competent and weigh the competent evidence); see Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271
(1983) (mere possibility does not satisfy requisite standard).
Moreover, the majority has not cited facts, as opposed to bald conclusions, which would support the diagnosis of asbestosis in accordance with the accepted medical standard for diagnosis. In particular, the majority appears to cite the opinion of Dr. Rostand as if he was the Advisory Panel Physician, when he was not.[5] Although Dr. Rostand, Dr. Darcey, Dr. Curseen, Dr. Dula, Dr. Grauel, and Dr. Bernstein provide opinions that plaintiff presented findings "consistent with" asbestosis, none of these physicians, nor any other competent expert, presented evidence that complied with the medically accepted minimum requirements for the diagnosis of asbestosis adopted by the American Thoracic Society. The issue before the Commission is whether plaintiff has "asbestosis," not merely whether there is evidence that he was exposed to asbestos or has other, unrelated pulmonary disease. The competent evidence[6] of records fails to support a diagnosis of asbestosis.
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5 requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed (at the time of the "hearing after first [panel] examination") in a position that causes harmful exposure to asbestos. See Austin v. Continental General Tire,141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion, 354 N.C. 334,553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing
that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] This provision requires plaintiff to prove: (1) he has asbestosis; and (2) he is engaged in employment that exposes him to the hazards of asbestosis. Plaintiff has failed to meet the first condition. Plaintiff also has not met the second condition, and indeed has presented no evidence to prove that his occupation currently exposes him "to the hazards of asbestosis." Moreover, the evidence is that plaintiff retired from his employment with defendant in 1986. Plaintiff retired at age 60. Plaintiff did not testify that he retired, or otherwise left work, because of breathing problems. Thus, plaintiff has not established that he is entitled to an order of removal. Further, only an appropriate order of removal, that actually removes plaintiff from his current employment in the industry, triggers the payment of 104 weeks of benefits. See Clarkv. ITT Grinnell, 141 N.C. App. 417, 539 S.E.2d 369, remanded forreconsideration, 354 N.C. 572, 558 S.E.2d 867 (2002); Austin,141 N.C. App. at 415; Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry ).
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray screening, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin, 141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he iscurrently exposed to the hazards of asbestos; i.e.: that he is employed in an industry that actually exposes him to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently presents a hazardous exposure to him while working. SeeAustin, 141 N.C. App. at 415.
Plaintiff has not presented any evidence that his employment with defendant currently exposes him to the hazards of asbestos. Plaintiff did not testify in this action. Moreover, the undisputed evidence is that plaintiff retired in 1986, more than 15 years before the "hearing after first examination."[7] Thus, there is no evidence that plaintiff iscurrently employed with defendant, let alone that the employment iscurrently hazardous. The majority finds in Finding of Fact No. 3, "[p]laintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 30 March 1966 to 31 March 1986." However, there is no evidence, stipulation, or reasonable inference to support the finding that plaintiff is currently, hazardously exposed to asbestos in employment with defendant. The majority correctly finds in Finding of Fact No. 1 that plaintiff was last employed on 31 March 1986 and that he was not diagnosed[8] with asbestosis until 10 December 1997. The parties also stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. This finding and stipulation taken together, however, do not support the necessary element under § 97-61.5(b) to establish that plaintiff at the present time is hazardously exposed in his employment with defendant. The stipulation does not define when during the twenty-some years of employment plaintiff was last exposed to the hazards of asbestos, and more significantly, does not state that plaintiff is currently exposed to the hazards of asbestos. Thus, there is no evidence to support an essential element of plaintiff's claim under § 97-61.5(b).
 PLAINTIFF'S § 97-57 ARGUMENT IS MISPLACED
Rather than presenting evidence of current exposure to the hazards of asbestos in his employment, plaintiff suggests that the stipulation, made pursuant to § 97-57, that plaintiff was exposed to asbestos for 30 days within a seven-month period,[9] presents an irrebuttable presumption that plaintiff was exposed to asbestos in the last 30 days of his employment. Plaintiff's reliance on § 97-57 to determine current
exposure is misplaced because § 97-57 is not applicable for determining current exposure. Section 97-57 determines liability for "last injurious exposure" when there is a series of defendants, all of whom are potentially liable because their employment caused plaintiff to be exposed to the hazards of asbestos. Defendant's stipulation to "last injurious exposure" merely indicates that, should plaintiff successfully establish a compensable claim for § 97-61.5(b) benefits, then defendant is the liable employer. Section 97-57 does not abrogate plaintiff's burden to prove the elements of his case, including but not limited to, the elements for removal and the award of 104 weeks under § 97-61.5(b).
Plaintiff's argument arises from a misinterpretation of the Court of Appeals' decision in Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991) and the North Carolina Supreme Court's decision in Fetner v. Rocky Mount Marble Granite Works,251 N.C. 296, 111 S.E.2d 324 (1959). Both of these cases deal with the issue of "last injurious exposure" for purposes of determining the particular defendant liable for benefits. Plaintiff misapplies § 97-57
to abrogate plaintiff's burden of proof with regard to current exposure when § 97-57 is only applicable after plaintiff has carried all of the threshold burdens of proof for compensability of his disease. Section97-57, in and of itself, does not remove plaintiff's burden to prove a necessary element of his § 97-61.5(b) claim; i.e.: current exposure to the hazards of asbestos. Furthermore, as these cases dealt with dusty trade defendants whose facilities continued to cause current exposure, whether there was "current exposure" was not an issue in controversy and therefore not a litigated issue in these cases.
Plaintiff has misinterpreted the Barber decision. Plaintiff, out of context, quotes Barber to find that § 97-57 "creates an irrebuttable legal presumption that the last 30 days of work is a period of last injurious exposure." See Barber 101 N.C. App. at 565. The issue inBarber was whether plaintiff who was only employed for forty-eight days at the second of two employers nevertheless had to establish that his exposure to asbestos was "injurious." The Court of Appeals correctly applied § 97-57 and explained "[i]n light of the irrebuttable legal presumption that the last thirty days of work subjecting the plaintiff to the hazards of asbestos is the period of last injurious exposure and the Commission's holding that plaintiff was exposed to the inhalation during the forty-eight days he worked for the defendant, such exposure must be deemed injurious." Id. at 566 [emphasis added]. However, contrary to plaintiff's argument in the instant case, the Court of Appeals in Barber
did not find that a plaintiff did not have to establish current exposure to asbestos for purposes of removal; rather, the Court of Appeals explained that the plaintiff did not have to prove that his exposure to asbestos was "injurious" because § 97-57 creates a presumption that 30 days of exposure within seven months is "injurious." Id. at 566. Further, the Court in Barber did not find evidence of exposure in the last 30 days of employment based on a presumption. In fact, the Barber
court had evidence of record to determine that plaintiff was exposed to asbestos during the forty-eight days that he worked for defendant. Id.
Similarly, the Supreme Court's decision in Fetner does not support plaintiff's argument that a stipulation of "last injurious exposure" is equivalent to a stipulation of current exposure. See Fetner v. RockyMount Marble Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959). InFetner, a dusty trades case, the issue was whether the exposure with a third employer for whom plaintiff only worked for eleven months was "injurious" when plaintiff was diagnosed with silicosis before he went to work for the third employer. In this case, plaintiff was diagnosed with silicosis on March 4, 1949, when he was working for the first employer, and his dusty trade card was revoked after his diagnosis. On August 10, 1950, plaintiff requested permission from the Industrial Commission to waive compensation and to go to work for the second employer. Plaintiff worked for the second employer from July 26, 1950 to October 19, 1950. Plaintiff then went to work for a third employer from November 4, 1950 to September 29, 1951. No waiver of compensation was sought for plaintiff's employment with the third employer, thereby raising the issue of whether the eleven-month employment with the third employer was "injurious" in light of the prior diagnosis of silicosis and prior revocation of plaintiff's dusty trade card based on that diagnosis. In examining the liability of the third employer, the Supreme Court held that the Commission may not arbitrarily select any thirty-day period of employment, but must select the last 30 days within a seven-month period during which the plaintiff was last exposed, as the period of "last injurious exposure." Fetner, 251 N.C. at 301. Moreover, the Supreme Court did not relieve plaintiff of the burden to present evidence on the period of hazardous exposure. Id. Competent evidence was presented and findings were made to determine when plaintiff was last exposed to the hazards of silica.
Contrary to the suggestion of plaintiff, the Fetner and Barber
decisions do not abrogate the requirement of plaintiff to establish by the greater weight of the competent evidence the period of hazardous exposure. Rather, these decisions hold that § 97-57 creates for purposes of liability among two or more defendants, where plaintiff proved hazardous exposure, an irrebuttable presumption that exposure for at least 30 days during a seven-month period is an "injurious exposure." In light of the stipulation of the parties and the lack of evidence of other hazardous employment, this issue is not present in this case; the defendant has stipulated that plaintiff's "injurious exposure" occurred during his employment with defendant.
Further, the plaintiff's illogical argument that the last thirty days of employment was injurious, without producing evidence of exposure to any asbestos during this thirty-day period, directly violates the Supreme Court's holding in Fetner that the Commission may "not arbitrarily select any thirty days of employment." Fetner, 251 N.C. at 300,111 S.E.2d at 327. The relevant period under § 97-57 is the "last thirty days of employment while exposed to silica [asbestos] dust." Fetner,251 N.C. at 300, 111 S.E.2d at 327. Without evidence of current exposure to asbestos, the Commission cannot find that plaintiff has met the second element of his claim, entitling him to an order of removal, which when accomplished triggers the award of 104 weeks of benefits. See Austin,141 N.C. App. at 145; N.C. GEN. STAT. § 97-61.5(b).
Further, the Barber and Fetner cases were only in litigation due to the apparent inequity resulting from the strict application of § 97-57
designating liability on the last hazardous employment and did not arise from any disagreement concerning "current exposure." For example, liability must be placed on the last employer where the plaintiff has been exposed to the hazards of asbestos for as little as 30 days even when a prior employer may have hazardously exposed plaintiff to asbestos for more than twenty years. However, an employer who escapes liability in one case despite long exposure may be the last, short-term employer in the next case. Thus, taken from a broad view, the statute is equitable, and is consistent with the goal of the Legislature to promote judicial economy. See N.C. GEN. STAT. § 97-57.
 REMOVAL FROM HAZARDOUS WORK
Plaintiff asks the Commission to remove plaintiff from employment with defendant when plaintiff is not currently employed with defendant and there is no competent evidence that employment would currently subject plaintiff, or others who actually work there, to the hazards of asbestos. An order of removal, which is a prerequisite to § 97-61.5(b) award of 104 weeks of benefits, is a legal nullity unless the plaintiff is actually working in an employment that creates a hazardous exposure to asbestos. Only an appropriate order of removal, that actually removes plaintiff from his current employment in the industry, triggers the payment of 104 weeks of benefits. See Clark v. ITT Grinnell,141 N.C. App. 417, 539 S.E.2d 369, remanded for reconsideration,354 N.C. 572, 558 S.E.2d 867 (2002); Austin, 141 N.C. App. at 415;Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry).
The question of current exposure to asbestos as a condition precedent to the award of 104 weeks of benefits was recently addressed by the Court of Appeals in Abernathy. See Abernathy v. Sandoz Chemical, 151N.C. App. 252, 565 S.E.2d 218, review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). In Abernathy, the plaintiff was represented by the same firm who represents plaintiff in this case. The Court of Appeals' opinion notes that the parties agreed that the Commission's award of 104 weeks of benefits was in error when the employee had retired and thereby was notcurrently engaged in employment that exposed him to the hazards of asbestos. Despite this concession before the Court of Appeals, plaintiff's counsel has not abandoned this argument before the Industrial Commission in this case, and insists that employees who are retired (such as the instant case), as well as those who are currently employed in positions where there is no evidence of current exposure to the hazards of asbestos, are entitled to removal and the 104 weeks of benefits. Further, plaintiff argues before the Commission that Austin does not require plaintiff to prove current exposure to the hazards of asbestos; however, Judge Greene's dissenting opinion, adopted by the Supreme Court, clearly states:
 "An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 141 N.C. App. at 415, 540 S.E.2d at 835. Judge Greene's statement is consistent with the express language of the Act requiring the Commission to order removal from "any occupation that exposes him to the hazards of asbestos". If the employee is not exposed to the hazards of asbestos, there is no hazardous employment from which to order the removal and the order of removal would be a legal nullity and, hence, could not trigger an award for 104 weeks of compensation.[10]
To trigger the award of 104 weeks of benefits the order of removal must cause plaintiff to be removed from the industry. In Moore, the court stated:
 "the language regarding `removal from the industry' has specific application only to occasions when identified victims of occupational disease are thereafter `removed' from a hazardous industry by directive of the Commission."
Clark, 539 S.E.2d at 376, citing, Moore, 469 S.E.2d at 596. The majority's remand to consider an order of removal ignores the statutory mandate that plaintiff is to be actually removed from his employment with defendant.[11] At best, an order of removal would be a legal nullity because there is no evidence that plaintiff is employed at all, let alone in an occupation that further exposes him to the hazards of asbestos. Moreover, since the order of "removal" cannot, and will not, in fact, remove plaintiff from his employment, let alone the industry, as plaintiff left employment before any directive of the Commission, a subsequent order of removal will not trigger the award of 104 weeks of benefits. Moore, 469 S.E.2d at 596; Austin, 141 N.C. App. at 415; Abernathy, supra; N.C. GEN. STAT. § 97-61.5(b).
The statutory mandate is for the Commission to determine "removal" and the award of 104 weeks of benefits at the "first hearing" after the panel examination. N.C. GEN. STAT. § 97-61.5. If plaintiff, as in this case, is not employed in a position that causes harmful exposure at the time the Full Commission hold the "hearing after first [panel] examination" the removal and benefit provisions of § 97-61.5(b) are not applicable. See Abernathy, 565 S.E.2d at 257; Austin,540 S.E.2d at 835-36; N.C. GEN. STAT. § 97-61.5. The benefits are for removal from "hazardous industry by a directive of the Commission."Clark, 539 S.E.2d at 376, citing, Moore,469 S.E.2d at 596.
 NO EVIDENCE TO SUPPORT EQUITABLE ESTOPPEL
The evidence in this case consists of several medical depositions, stipulated medical records, and the hearing agreement of the parties. The majority, however, would have the Commission decide this case on argument of counsel that is not supported by the record.[12] There is no evidence before the Commission in this case to support the findings of the majority made in Findings of Fact Nos. 15, 16, and 17. These "findings" come solely from suggested argument of counsel for plaintiff. No evidence was presented to support the "findings" made by the majority. The argument of counsel is not evidence.
Moreover, there is no evidence, available for review, to suggest that plaintiff exhibited signs of asbestosis in 1986, when he retired,[13] or at any other times while he was employed by defendant. Without medical evidence that plaintiff had diagnosable asbestosis while working for defendant, there is no basis to apply an estoppel theory. Further, there is no evidence that plaintiff was in the medical monitoring program, therefore, there is no basis to assume[14] that he would have anticipated that this program would have protected him. Thus, there is no basis to apply the estoppel doctrine under the circumstances of this case.
Inappropriately, the majority has chosen to decide this case based on the unsupported argument of plaintiff's counsel rather than to accurately review the evidence of record.
 104 WEEKS NOT APPROPRIATE COMPENSATION FOR PLAINTIFF
Plaintiff also suggests that in order to provide compensation within the intent of the Act, the award of 104 weeks is necessary. Plaintiff's argument, however, fails to recognize that plaintiffs, who though they are not currently exposed to the hazards of asbestos and thus entitled to 104 weeks of benefits because of removal, are afforded relief for their diagnosed disease under other statutory provisions. In fact, pursuant to § 97-64, a disabled plaintiff is entitled to recover benefits under §§ 97-29, 97-30, or 97-31. Abernathy, supra; Clark,141 N.C. App. at 428-429; see Honeycutt v. Carolina Asbestos Co.,235 N.C. 471, 70 S.E.2d 426 (1952) (entitled to ordinary compensation under the general provisions of the Act). The fallacy of plaintiff's argument was explained in Clark:
 . . . defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are actually removed
from their employment." (Emphasis added). This Court addressed the removal requirement in Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594 (1996).
 [T]he term "removal" as used by G.S. § 97-61.5
presumed medical diagnosis will occur during the hazardous employment. Thus the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease are thereafter "removed" from hazardous industry by a directive of the Commission. However, the phrase is inapposite to instances as that sub justice wherein a claimant is diagnosed at some point subsequent to leaving hazardous employment.
 Id. at 378, 469 S.E.2d at 596. . . .
Clark 141 N.C. App. at 428-29. Although Moore and other decisions[15]
have questioned appropriate compensation for employees who are not entitled to removal, the Court, in Clark, explained that the Act, as amended, expressly provides workers' compensation benefits for employees who suffer from the occupational disease of asbestosis:
 The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64 (1991), which provides:
 Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.
Clark 141 N.C. App. at 428-29; see Abernathy, supra. Thus, because the Act does in fact provide benefits to disabled plaintiffs with asbestosis who are not currently exposed to the hazards of asbestos and consequently are not entitled to 104 weeks of benefits, and because there is no sound policy reason to extend the application of § 97-61.5 beyond its express and intended purpose, there is no basis to award § 97-61.5(b) benefits in this case.
The majority inappropriately cites Honeycutt v. Carolina Asbestos Co.,235 N.C. 471, 70 S.E.2d 426 (1952), for the proposition that the 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. This finding arises from plaintiff's suggestion that the waiver provision of § 97-61.7
allows an employee to continue in his employment and at the same time receive the 104 weeks of benefits pursuant to § 97-61.5. Although § 97-61.7, and cases interpreting this provision,[16] have allowed employees to obtain the 104 weeks of benefits under § 97-61.5, our courts have held that § 97-61.7 applies only after an employee has been ordered removed and awarded compensation under § 97-61.5. SeeAustin, 141 N.C. App. at 416. Thus, § 97-61.7 does not remove plaintiff's burden to prove his entitlement to benefits under §97-61.5(b). Plaintiff's argument that Sections 97-61.5 and 97-61.7 are to be read together was rejected by the Supreme Court in Austin, which adopted the dissent of Judge Greene rather than the majority opinion of the Court of Appeals.
In the instant claim, plaintiff has not sought a waiver from removal from the Commission. In addition, plaintiff has not presented evidence to the Commission on the issue of whether the Commission should approve a waiver of further benefits and allow plaintiff to continue in hazardous employment. Therefore, a § 97-61.7 question is not properly before the Commission.
Moreover, the majority's citation to Honeycutt is not appropriate.Honeycutt is not a § 97-61.5(b) case and predates the enactment of this provision. Thus, the Supreme Court in Honeycutt did not award §97-61.5(b) benefits, or otherwise discuss § 97-61.5(b), an order of removal, the award of 104 weeks of benefits, the payment of benefits while continuing in current employment, or the payment of 104 weeks of benefits for the incurable nature of the disease. Rather, Honeycutt
supports the proposition that an employee with asbestosis is entitled to recover compensation under the general provisions of the Act (i.e.: §§ 97-29, -30, -31) as expressed in § 97-61.
In Comstock v. Weyerhaeuser Company, I.C. No. 931412, filed on February 3, 2003, the same Commissioners composing the majority in this case, denied plaintiff's claim for § 97-61.5(b) benefits because "a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire,354 N.C. 344, 553 S.E.2d 680 (2001)." [COL 4 in I.C. No. 931412.] The same majority has also denied the 104 weeks of benefits to retirees in I.C. File No. 002991, Davenport v. Weyerhaeuser. The circumstances are no different in this case, and thereby, the results should be the same.
 § 97-88.1 ATTORNEY'S FEES
Finally, the majority opinion finds that plaintiff's claim for attorney's fees for unfounded litigiousness pursuant to § 97-88.1
should be "held in abeyance." [Conclusion of Law No. 8.] If a ruling on this issue cannot be made at this time, then clearly there are and will be no grounds to assess attorney's fees. If it cannot be determined that the defense is unreasonable, then in fact the defense is patently reasonable as reasonableness is not determined in hindsight. Further, as noted above, this case includes numerous legal issues on which the parties, including defendant, have a right to a ruling by the Commission and subsequently by the Courts. Thus, plaintiff's claim for attorney's fees pursuant to § 97-88.1 must be denied. See Shaw v. United ParcelService, 116 N.C. App. 598, 449 S.E.2d 50 (1994), aff'd per Curiam,342 N.C. 189, 463 S.E.2d 78 (1995).
 CONCLUSION
For the foregoing reasons, plaintiff's claim for 104 weeks of benefits pursuant to § 97-61.5(b) must be denied. Therefore, I must respectfully dissent from the majority's opinion remanding this case for reconsideration of § 97-61.5(b) benefits.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DCS/gas
[1] Although Dr. Anderson testified, at the suggestion of plaintiff's counsel, that the first two elements (exposure and latency) are sufficient to diagnose asbestosis, this statement is not consistent with the American Thoracic Society standard. The American Thoracic Society expressed that "[I]t is possible that interstitial fibrosis may be present even though none of these criteria [referring to items 3-6, above] are satisfied, but in our opinion, in these circumstances the clinical diagnosis cannot be made." Thus, a proper diagnosis, absent pathologic examination, requires proof of the first two criteria and at least 1 of the remaining criteria. The Diagnosis of Nonmalignant Diseases Related toAsbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986).
[2] The pulmonary function studies show emphysema and chronic obstructive pulmonary disease, most likely secondary to an extensive history of cigarette smoking. Plaintiff is reported to have a 62 pack-a-year smoking history. In the words of Dr. Dula, plaintiff's emphysema is so severe and the interstitium was so sparse that interstitial fibrosis was "somewhat difficult to evaluate." Although plaintiff definitely has obstructive disease, probably secondary to smoking, the pulmonary testing does not reveal restrictive disease that would be consistent with asbestosis.
[3] For example, the majority finds that asbestosis based on the reports of Dr. Johnson and Dr. Lucas, when their medical findings do not meet the minimum requirements for the diagnosis under the American Thoracic Society standard that has been adopted by the American Lung Association and the American Medical Association. See The Diagnosis ofNonmalignant Diseases Related to Asbestos, 134 American Review ofRespiratory Disease 363 (Adopted by American Lung Association, March 1986). In particular, Dr. Johnson's CT report states: "I see no pleural plaque or calcification to indicate CT evidence of asbestos exposure." Similarly, Dr. Lucas reported a profusion rating of 1/0 on a B-Read less than the 1/1 requirement of the American Thoracic Society criteria. Although Dr. Lucas reported that the 1/0 reading was "consistent with asbestosis" it is not sufficient to support a medical diagnosis of asbestosis. Id. Further, pulmonary function studies revealed mild obstructive disease without evidence of restrictive disease necessary to establish a medical diagnosis of asbestosis. Id.
[4] Under Rule 401 of the North Carolina Rules of Evidence, "relevant evidence" is defined as evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In other words, relevant evidence tends to establish that a contested fact is more, or less, likely.
[5] Contrary to the majority opinion Finding of Fact No. 7, Dr. Rostand is not an Advisory Medical Panel Physician. His report was not reviewed by two other physicians on the Advisory Medical Committee. Dr. Rostand saw plaintiff has a physician in lieu of the Advisory Medical Panel examination. See N.C. GEN. STAT. § 97-73. Moreover, Dr. Rostand was not deposed and his report does not cite any x-rays meeting the minimum 1/1 profusion requirement of the American Thoracic Society standard or other evidence that would support a diagnosis of asbestosis under this medically accepted standard.
[6] The bald opinion of physicians that are not supported by the relevant medical tests necessary to the diagnosis is not competent medical evidence. Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Smith v. Beasley Enterprises, 577 S.E.2d 902
(2002) (Industrial Commission must determine whether evidence is competent and weigh the competent evidence); see Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard).
[7] The "first hearing" expressed in § 97-61.5 occurred on 30 May 2002.
[8] As explained above the diagnosis by Dr. Darcey is not competent because plaintiff's x-rays and pulmonary function studies have not revealed findings consistent with the minimum requirements for a differential diagnosis under the medically accepted standard adopted by the American Thoracic Society.
[9] The stipulation of the parties reads:
 "It is stipulated that the Plaintiff-Employee was last injuriously exposed to asbestos during Plaintiff's employment with Defendant-Employer Weyerhaeuser Company, and specifically, that the Plaintiff-Employee was exposed to asbestos for thirty (30) days within a seven month period, as is required by N.C. Gen. Stat. § 97-57."
[10] Plaintiff also suggests that the stipulation of the parties also requires the Commission to enter an order of removal. The stipulation states: "The parties agreed further that should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b) the Deputy Commissioner may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b)." This stipulation is contingent on a finding that "plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b)" and does not otherwise abrogate the requirements of the Commission to comply with § 97-61.5(b) of the Act.
[11] The prerequisites for the order of removal are:
 diagnosis of asbestosis or silicosis; and, current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
N.C. GEN. STAT. § 97-61.5(b). The award of 104 weeks of benefits requires that plaintiff additionally prove a third element:
 that the employee is removed from the industry at the directive of the Commission.
Id.; Moore, 469 S.E.2d at 596; Clark, 539 S.E.2d at 376.
[12] In particular Finding of Fact No. 16 reads: "At the hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis." Ironically, directly contrary to this representation, there is no evidence that plaintiff was in a medical monitoring program; therefore, there is no basis to conclude that plaintiff could have relied on the program to protect him.
[13] Medical records indicate that plaintiff had coronary by-pass surgery in 1989. No medical records, or other evidence, were admitted to suggest that plaintiff has evidence of asbestos-related disease at the time that his thorax was explored and his pleura were manipulated in the course of this surgery. Nor, was any evidence admitted showing that plaintiff had abnormal pulmonary function studies at the time of this hospitalization.
[14] The Commission should be making decisions based on evidence not assumptions suggested by counsel.
[15] Even, Judge Greene, in Austin, wrote:
 "I acknowledge the `removal' requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to diagnosis of asbestos should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature."
Austin, 540 S.E.2d at 836. This inquiry, however, does not remove the requirement explained by the Supreme Court that the removal from hazardous employment must occur at the "directive of the Commission."Moore, 569 S.E.2d at 596.
[16] Section 97-61.7 provides that "[a]n employee who has been compensated" under § 97-61.5(b) as an alternative to forced change of occupation may, subject to approval of the Industrial Commission, waive further compensation and continue his employment. Plaintiff incorrectly relies on Bye v. Interstate Granite Company, 230 N.C. 334, 53 S.E.2d 274
(1949), which preexisted the current statutory provision for an order of removal, for the proposition that plaintiff may receive an order of removal and continue to maintain his employment. A careful reading of this case reveals that the Commission did not actually order plaintiff to be removed from his employment, but, advised plaintiff that he should seek new employment based on reports from his examining physician and based on plaintiff's age and long exposure and left the decision to leave his employment to plaintiff. Significantly, the Bye decision pre-dates the changes to the Act requiring the Commission to order removal, and in fact, no order of removal was entered by the Commission in that case, therefore, Bye does not support the proposition for which it is offered by plaintiff. Plaintiff also cites Roberts v. Southeastern Magnesia Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983) for the proposition that the Commission can order plaintiff to "refrain from exposing himself to the hazards of employment" and receive 104 weeks of benefits without leaving his employment. Contrary to the suggestion of plaintiff, however, the Roberts decision stands for the proposition that a plaintiff is entitled to compensation for his removal from employment exposing plaintiff to the hazards of asbestos as an incentive to force change in occupation, or provide a "safety net", without requiring plaintiff to prove an incapacity to earn wages due to his disease.61 N.C. App. at 709. In Roberts, there was no evidence that plaintiff continued to be exposed to asbestos after his removal was ordered. The critical evidence was that plaintiff was the president of defendant-employer, that he was daily exposed to asbestos before the order of removal, regardless of the fact that defendant-employer was phasing out its use of asbestos.
Plaintiff also inappropriately relies on Honeycutt v. Carolina AsbestosCo., 235 N.C. 471, 70 S.E.2d 426 (1952). Honeycutt is not a §97-61.5(b) case, and predates the current statutory provisions. InHoneycutt, plaintiff was diagnosed with asbestosis at which time his dusty trades card was revoked and the recommendation was made for plaintiff to obtain new employment. Plaintiff found new employment as a police officer where he earned greater wages. The issue was whether plaintiff had "disability" because he had no loss of wage earning capacity. The Supreme Court explained the difference between "disablement" applicable to asbestosis and silicosis cases and "disability" for all other injuries/diseases and held that "disablement" under § 97-54 is not the same as "disability" under § 97-2. The Supreme Court explained that for asbestosis/silicosis cases "disablement" means "the event of becoming actually incapacitated from performing normal labor in the last occupation in which [plaintiff was] remuneratively employed." In Honeycutt the Supreme Court did not approve benefits under §§ 97-61.5(b) or 97-61.7. There is no mention of an order of removal or 104 weeks in this case. Rather, the Supreme Court held that plaintiff "would be entitled to ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. § 97-61;Young v. Whitehall Co., 229 N.C. 360, 49 S.E.2d 797" (1948).