CECIL S. ABERNATHY, Administratrix of the Estate of BAILEY L. ABERNATHY, Plaintiff v. SANDOZ CHEMICALS/CLARIANT CORPORATION, Employer, and THE TRAVELERS INSURANCE COMPANY, and LIBERTY MUTUAL INSURANCE COMPANY, Carriers, Defendants

No. COA01-834

(Filed 2 July 2002)

1. **Workers' Compensation— retired employee—occupational disease—asbestosis—entitlement to compensation**

    The Industrial Commission erred in a workers' compensation case by concluding that plaintiff retired employee is entitled to 104 weeks of compensation under N.C.G.S. § 97-61.5 for asbestosis that was diagnosed after he was no longer employed, and the case is remanded to the Industrial Commission for a determination as to whether plaintiff is entitled to compensation under N.C.G.S. § 97-64.

2. **Workers' Compensation— retired employee—average weekly wage**

    The Industrial Commission erred in a workers' compensation case by its calculation of plaintiff retired employee's average weekly wage based on the parties' alleged stipulation when the

ABERNATHY v. SANDOZ CHEMS./CLARIANT CORP.

[151 N.C. App. 252 (2002)]

parties did not in fact stipulate to an amount, and the Industrial Commission must determine the average weekly wage in accordance with the second full paragraph of N.C.G.S. § 97-2(5) if on remand plaintiff establishes his disablement from asbestosis and his entitlement to compensation under N.C.G.S. § 97-64.

**3. Workers' Compensation— occupational disease–asbestosis—insurance carrier at time of risk**

The Industrial Commission did not err in a workers' compensation case by its determination that the proper insurance carrier on the risk at the time of plaintiff retired employee's last injurious exposure to asbestos was the defendant carrier for defendant employer from 31 October 1991 until plaintiff's retirement on 30 June 1993, and on remand the previous company carrier for defendant employer from 31 October 1980 until 31 October 1991 shall be dismissed as a party to this action.

Appeal by defendants Clariant Corporation and The Travelers Insurance Company from opinion and award entered 22 February 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 March 2002.

*Wallace and Graham, P.A., by Richard L. Huffman, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Neil P. Andrews, Angelina M. Maletto and Hatcher B. Kincheloe, for defendant-appellants Clariant Corporation and The Travelers Insurance Company.*

*Alala Mullen Holland & Cooper, P.A., by H. Randolph Sumner and Jesse V. Bone, Jr., for defendant-appellee Liberty Mutual Insurance Company.*

MARTIN, Judge.

Plaintiff was employed by defendant Clariant Corporation (formerly Sandoz Chemicals Corporation) as a pipe fitter and insulator from 24 June 1968 until 30 June 1993. On 16 February 1996, plaintiff filed a claim alleging that he was suffering from asbestosis as a result of his exposure to asbestos in connection with his employment. Defendants denied the claim.

Briefly summarized, the evidence tended to show that plaintiff testified he was exposed to asbestos while working in pipefitting,

insulation, construction and maintenance work for defendant employer. Plaintiff testified that defendant employer used twenty different asbestos materials while he was employed there, and that he was exposed to asbestos "someway or other" up until the day he quit. Plaintiff testified that he retired in 1993, at the age of 63, in part because he "wasn't up to par" and that he "couldn't keep up." Although Bobby Cleveland, plaintiff's supervisor for many years, testified that from 1990 until 1993, he had no knowledge that plaintiff was exposed to asbestos fibers, John Evans, a co-worker of plaintiff during the period, testified that he worked in defendant's salvage yard between 1991 and 1993, and that plaintiff often worked in the yard tearing off insulation and disposing of it in hazardous waste dumpsters. Evans stated that the conditions were very dusty.

After a chest x-ray in early 1995, and a subsequent CT scan, which showed abnormalities, plaintiff was examined by Dr. Douglas G. Kelling, Jr., on 25 August 1995. Dr. Kelling diagnosed plaintiff as suffering with asbestosis. Defendant Liberty Mutual was the workers' compensation insurance carrier for defendant employer from 31 October 1980 until 31 October 1991; defendant Travelers Insurance Company was the carrier from 31 October 1991 until plaintiff's retirement on 30 June 1993.

A deputy commissioner determined that plaintiff was injuriously exposed to the hazards of asbestos during his employment with defendant employer and that plaintiff has asbestosis. The deputy commissioner awarded plaintiff 104 weeks of compensation pursuant to G.S. § 97-61.5. The deputy commissioner further determined that defendant Travelers was on the risk at the time of plaintiff's last injurious exposure and is, therefore, liable for payment of the compensation.

Defendants Clariant and Travelers appealed to the Full Commission. The Full Commission entered its opinion and award affirming the deputy commissioner. Defendants Clariant and Travelers appeal to this Court.

---

I.

[1] Defendants Clariant and Travelers assign error to the Commission's determination that plaintiff is entitled to 104 weeks of compensation pursuant to G.S. § 97-61.5 because plaintiff had already retired at the time he was diagnosed with asbestosis and, therefore, was not "removed" from the occupation giving rise to the hazard. At

oral argument, the parties agreed that the issue has been settled by the decision of the North Carolina Supreme Court in *Austin v. Continental General Tire*, 354 N.C. 344, 553 S.E.2d 680 (2001), and that plaintiff does not qualify for benefits under the statutory scheme of G.S. § 97-61.5. In *Austin*, a majority of a divided panel of this Court held that the plaintiff was entitled to compensation under G.S. § 97-61.5, despite the fact that the plaintiff had already retired from the company prior to being diagnosed with asbestosis. *Austin v. Continental General Tire*, 141 N.C. App. 397, 540 S.E.2d 824 (2000). The majority held that it was not necessary for the plaintiff to be removed from his employment in order to qualify for 104 weeks of compensation under the statute. Judge Greene dissented, stating:

> The unambiguous language of section 97-61.5(b) requires an employee to be "removed" from his employment as a prerequisite to receiving the 104 weeks of compensation provided for in the statute . . . . An employee who is no longer employed at the time he is diagnosed with asbestosis, therefore, may not, under the plain language of section 97-61.5(b), proceed with a workers' compensation claim under this statute.

*Id.* at 415, 540 S.E.2d at 835. Judge Greene stated that G.S. § 97-64 provides the sole remedy for the plaintiff's asbestos related illness. In a *per curiam* opinion, the Supreme Court adopted Judge Greene's dissent and reversed, remanding the case to this Court for further remand to the Industrial Commission for proceedings consistent with the dissent. *Austin v. Continental General Tire*, 354 N.C. 344, 553 S.E.2d 680 (2001). Under G.S. § 97-64, "the legislature established the general rule that an employee becoming disabled by asbestosis or silicosis within the terms of the specific definition embodied in G.S. § 97-54 should be entitled to ordinary compensation measured by the general provisions of the Workmen's Compensation Act." *Young v. Whitehall Co.*, 229 N.C. 360, 366, 49 S.E.2d 797, 801 (1948). Thus, we must reverse the Commission's award of compensation pursuant to G.S. § 97-61.5 and remand this case to the Industrial Commission for a determination as to whether plaintiff is entitled to compensation under G.S. § 97-64.

II.

[2] Defendants Clariant and Travelers next contend the Industrial Commission erred in calculating plaintiff's average weekly wage. The deputy commissioner recited, in her opinion and award, the following

stipulation: "4. Plaintiff's average weekly wage was $611.49, yielding a compensation rate of $470.66." Defendants contend they did not stipulate to the average weekly wage and direct us to the pre-trial agreement, which states: "The plaintiff contends the average weekly wage was $611.49 which provides a compensation rate of $470.66." Plaintiff responds that defendants did not properly preserve the deputy commissioner's allegedly erroneous recitation for review by the Full Commission, thereby waiving their right to a review of the issue. Therefore, plaintiff contends, the issue is not properly before this Court for review.

Industrial Commission Rule 701(2) states:

> After receipt of notice of appeal, the Industrial Commission will supply to the appellant a Form 44 Application for Review upon which appellant must state the grounds for the appeal. The grounds must be stated in particularity, including the specific errors allegedly committed by the Commissioner or Deputy Commissioner and, when applicable, the pages in the transcript on which the alleged errors are recorded. Failure to state with particularity the grounds for appeal shall result in abandonment of such grounds . . . .

However, in *Tucker v. Workable Company*, 129 N.C. App. 695, 701, 501 S.E.2d 360, 365 (1998) (citations omitted), this Court held that "[a]lthough Rule 701 provides that appellant must state with particularity the grounds for appeal,"

> [t]his Court has held that when the matter is "appealed" to the full Commission pursuant to G.S. 97-85, it is the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties.

*Id.* (citing *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 374 S.E.2d 610 (1988)).

In the present case, although defendants did not state with particularity, in their Form 44 application for review by the Full Commission, their contention that the deputy commissioner's recitation of the stipulation was error, defendant did state: "Deputy Commissioner Taylor erred in using Plaintiff's last full year of employment to calculate his average weekly wage." We hold the language was sufficient to preserve the issue of the proper calculation of plaintiff's average weekly wage for review.

As we have held in Section I of this opinion, though plaintiff does not qualify for compensation pursuant to G.S. § 97-61.5, he is nevertheless entitled to pursue a claim for compensation pursuant to G.S. § 97-64. That statute provides: "[e]xcept as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act." Disablement from asbestosis is defined as "the event of becoming actually incapacitated because of asbestosis . . . to earn, in the same or any other employment, the wages which the employee was receiving at the time of his last injurious exposure to asbestosis . . . ." N.C. Gen. Stat. § 97-54.

If, on remand, plaintiff establishes his disablement from asbestosis, and his entitlement to compensation pursuant to G.S. § 97-64, the Commission must determine his average weekly wage. This Court, in *Moore v. Standard Mineral Company*, 122 N.C. App. 375, 469 S.E.2d 594 (1996), held that the proper date for determining the average weekly wage of a plaintiff for the purpose of determining benefits under G.S. § 97-61.5 was as of the time of injury, which was deemed to be the date of diagnosis of silicosis or asbestosis. In *Moore*, however, the plaintiff was still earning a wage when he was diagnosed, albeit in other employment. The Court noted that, "[i]n so holding,"

> we emphasize that the situation of a claimant **no longer employed in any capacity at the time of diagnosis** is not before us, and that legislative action to address such an instance may well be required to fulfill completely the intended purpose of compensating workers who have contracted occupational diseases.

*Id.* at 380, 469 S.E.2d at 598 (emphasis added). Indeed, Judge Greene acknowledged, in his dissent in *Austin*,

> the "removal" requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to a diagnosis of asbestosis should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature.

*Austin*, 141 N.C. App. at 416, 540 S.E.2d at 836 (citing *Moore, supra*). Thus, the holding in *Moore*, that the average weekly wage is computed as of the date of diagnosis, is not applicable to the case before us since plaintiff in the present case was no longer employed in any capacity at the time he was diagnosed with asbestosis.

Under the general provisions of the Workers' Compensation Act, G.S. § 97-2(5) "provides a hierarchy" of five methods for computing average weekly wages. *McAninch v. Buncombe County Schools*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997). The final method, contained in the second full paragraph of G.S. § 97-2(5) provides:

> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5). This final method "may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods." *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (citation omitted).

In the present case, it would be obviously unfair to calculate plaintiff's benefits based on his income upon the date of diagnosis because he was no longer employed and was not earning an income. And, since the General Assembly has made no specific provision for determining compensation pursuant to G.S. § 97-64 when a former employee is diagnosed with asbestosis some time after his removal from the employment, the only statutory provision which may in fairness be used is the method recited above. Plaintiff testified that he retired from defendant company in 1993 because he "wasn't up to par" and "couldn't keep up" in his job duties. He also stated he would have liked to keep working until he was 65 but his "health wasn't that good." Because plaintiff contracted asbestosis by working around asbestos for 25 years at defendant employer, the only fair method for determining his average weekly wage is using his latest full year of employment with defendant company, which appears to be the same figure the deputy commissioner and the Full Commission used in their calculations of plaintiff's average weekly wage. Accordingly, in remanding this case to the Industrial Commission for a determination of plaintiff's entitlement to compensation pursuant to G.S. § 97-64, we also instruct the Commission, if it determines plaintiff is entitled to compensation, to calculate plaintiff's average weekly wage in accord-

ance with the method prescribed by the second full paragraph of G.S. § 97-2(5).

## III.

**[3]** Defendants Clariant and Travelers also assign error to the Commission's determination that Travelers was the carrier on the risk at the time of plaintiff's last injurious exposure. In our review of an opinion and award of the Industrial Commission, findings of fact "are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965).

G.S. § 97-57 provides:

> In any case where compensation is payable for an occupational disease, *the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.*

> For the purpose of this section when *an employee has been exposed to the hazards of asbestosis or silicosis for as much as 30 working days, or parts thereof, within seven consecutive calendar months, such exposure shall be deemed injurious* but any less exposure shall not be deemed injurious . . . (emphasis added).

As defendants conceded during oral argument, sufficient "competent evidence" was presented in the hearing to warrant the Commission's finding. Plaintiff stated that he worked around asbestos in one way or another up until the day he retired, and that he worked directly with asbestos approximately four days a week from 1991 to 1993. Another employee, John Evans, testified that plaintiff would be down at the salvage yard two or three times a week, "taking down pipe" which contained asbestos, and doing other work. The salvage yard was very dusty with levels of asbestos present. Scientific evidence is not required to prove the causal connection between exposure to asbestos and the contracting of asbestosis. *Clark v. ITT Grinnell Ind. Piping, Inc.*, 141 N.C. App. 417, 539 S.E.2d 369 (2000), *remanded for reconsideration on other grounds*, 354 N.C. 572, 558 S.E.2d 867 (2001); *See also Gay v. J.P. Stevens & Co.*, 79 N.C. App. 324, 339 S.E.2d 490 (1986); *McCuiston v. Addressograph-Multigraph Corp.*,

308 N.C. 665, 303 S.E.2d 795 (1983). Defendants' assignments of error related to these arguments are overruled, and the Commission's determination that Travelers "was on the risk at the time of plaintiff's last injurious exposure" is affirmed. Therefore, upon remand, defendant Liberty Mutual Insurance Company shall be dismissed as a party to this action.

Affirmed in part, reversed in part, and remanded.

Judges TYSON and THOMAS concur.