EILEEN C. PAYNE, Administratrix of the Estate of HERBY S. PAYNE, Deceased, Employee, Plaintiff v. CHARLOTTE HEATING & AIR CONDITIONING, Employer, EMPLOYERS MUTUAL INSURANCE COMPANY, Carrier, and/or ROSS AND WITMER, INC., Employer, TRAVELERS INSURANCE COMPANY, Carrier, Defendants

No. COA03-1651

(Filed 16 August 2005)

**1. Appeal and Error— assignment of error—supporting authority required**

Defendants' contention that workers' compensation death benefits were not properly before the Industrial Commission was not addressed because they failed to cite authority supporting their assignment of error.

**2. Workers' Compensation— death benefits—opportunity to present evidence**

Although defendants contended that they had not had the opportunity to present evidence on a workers' compensation death benefit claim, the record shows that defendants had notice that death benefits would be at issue and chose to rely on the contention that the question was not properly before the Commission.

**3. Workers' Compensation— asbestosis—death benefit—time limit—equal protection violation**

The time limitation for filing a claim for workers' compensation death benefits involving asbestosis and silicosis (N.C.G.S. § 97-61.6) violates the Equal Protection Clause under the rational

basis test. Since the parties here agreed that plaintiff's claim was within the time limit applicable to other occupational diseases, plaintiff's claim was timely filed.

**4. Workers' Compensation— asbestosis—cause of death— finding by Commission—supported by evidence**

The Industrial Commission's finding in a workers' compensation case that the deceased suffered from asbestosis is supported by competent evidence and is binding on appeal. The Commission extensively reviewed the medical evidence and is entitled to resolve questions of credibility and weight in plaintiff's favor.

**5. Workers' Compensation— asbestosis—cause of disability— contributing cause of death—supported by evidence**

There was evidence in the record to support the Industrial Commission's decision in a workers' compensation case that the deceased's asbestosis caused his disability and significantly contributed to his death.

**6. Workers' Compensation— asbestosis—last exposure—findings supported by evidence**

The evidence is sufficient to support the Industrial Commission's finding in a workers' compensation case that a deceased's last injurious exposure to asbestos occurred during his employment with defendant Ross & Witmer. There was testimony that the deceased worked directly with and supervised people cutting and installing asbestos wallboard and asbestos cloth and the deceased's supervisor testified that the deceased would have been exposed to asbestos any time he was on the job site.

Appeal by defendants Ross and Witmer, Inc. and Travelers Insurance Company from Opinion and Award of the North Carolina Industrial Commission entered 14 July 2003. Heard in the Court of Appeals 12 October 2004.

*Wyrick, Robbins, Yates & Ponton, L.L.P., by K. Edward Greene and Kathleen A. Naggs; Wallace & Graham, P.A., by Mona Lisa Wallace, Richard L. Huffman; and M. Reid Acree, for plaintiff-appellee.*

*Nexsen, Pruet, Adams, Kleemeier, P.L.L.C., by Sean M. Phelan, for defendants-appellees Charlotte Heating & Air Conditioning and Employers Mutual Insurance Company.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by C. J. Childers, for defendants-appellants Ross and Witmer, Inc. and Travelers Insurance Company.*

GEER, Judge.

This appeal arises out of Herby S. Payne's workers' compensation claim for disability benefits based on asbestosis. Subsequent to the hearing on his claim, but before a decision was rendered, Mr. Payne died and his wife Eileen C. Payne, the administratrix of his estate, was substituted as plaintiff. Defendants Ross and Witmer, Inc. ("R&W") and Travelers Insurance Company have appealed from the Industrial Commission's opinion and award (a) granting total disability benefits for a period preceding Mr. Payne's death and death benefits under N.C. Gen. Stat. § 97-39 (2003) and (b) finding that Mr. Payne was last injuriously exposed to the hazards of asbestosis while employed at R&W.

The primary issues on appeal are whether the death benefits claim was properly before the Commission and, if so, whether it is time-barred by N.C. Gen. Stat. § 97-61.6 (2003). We hold that the Full Commission had authority to decide the death benefits claims. Further, because we have concluded that N.C. Gen. Stat. § 97-61.6 violates the Equal Protection Clause, we hold that the claim for death benefits was timely. With respect to defendants' arguments regarding the merits of plaintiff's claim for benefits, since the Commission's findings are supported by competent evidence, the appropriate standard of review compels that we affirm the Commission's opinion and award.

## Facts

Mr. Payne worked at Charlotte Heating & Air Conditioning from 1960 through 1966. He was responsible for servicing furnaces and boilers, during the course of which he was exposed to asbestos products. Mr. Payne mixed "asbestos mud" by pouring asbestos powder into buckets and adding water. He used the mud to repair boilers and insulate pipes. He also worked with asbestos rope and asbestos millboard, cutting it to size and installing it. Although he was, as a result, exposed to airborne asbestos dust, he was not provided and never used any form of respiratory protection.

After working for other companies in positions not involving significant asbestos exposure, Mr. Payne was employed by R&W from

1972 to 1975. At R&W, Mr. Payne primarily fabricated and installed duct work from sheet metal, but he also "set some furnaces." At one point during his employment with R&W, Mr. Payne worked on an apartment complex construction project involving furnace installations in 160 to 170 apartment units. Each furnace was surrounded by asbestos millboard and asbestos cloth. Mr. Payne was the supervisor of the crew and the Commission found was exposed to airborne asbestos dust without having respiratory protection.

After Mr. Payne's employment with R&W ended, his subsequent jobs did not expose him to asbestos products to any significant extent. In 1989, Mr. Payne developed back problems that required surgery. After the surgery, he remained symptomatic and did not return to work, but rather began receiving Social Security disability. Mr. Payne and his wife both testified that ultimately his back symptoms were no longer the cause of his disability.

In January 1994, Mr. Payne saw a pulmonologist regarding a notable worsening of his ability to breathe. Mr. Payne had smoked one to two packages of cigarettes daily until quitting in 1993. Pulmonary function studies indicated very severe obstructive lung disease and severe emphysema. Upon further x-rays and examinations, Mr. Payne was diagnosed with emphysema, asbestosis, and pleural plaques related to asbestos exposure. Two National Institute of Occupational Safety and Health ("NIOSH") certified "B readers," who evaluate whether workers exposed to dust in their work environments have dust-related disease, also found that Mr. Payne had asbestosis or disease related to asbestos exposure. A third certified "B reader" found pulmonary abnormalities caused by asbestosis, but concluded that asbestos exposure probably did not contribute to Mr. Payne's pulmonary impairment.

In February 1996, Mr. Payne filed an Industrial Commission Form 18B seeking total disability benefits based on asbestosis. A hearing was conducted on Mr. Payne's claim on 3 May 2000 by deputy commissioner Morgan S. Chapman. On 16 October 2000, Mr. Payne died. The deputy commissioner ultimately ordered that the record remain open until 15 September 2001, almost a year later. On 21 November 2001, the deputy commissioner issued an opinion and award, sustaining defendants' objection to any ruling on the issue of death benefits; holding that, in any event, death benefits were barred by N.C. Gen. Stat. § 97-61.6; and finding that Mr. Payne did not contract asbestosis and did not suffer any disability as a result of his exposure to asbestos.

On 14 July 2003, the Full Commission filed an opinion and award, finding that the issue was properly before the Commission; that Mr. Payne did indeed have asbestosis; that his asbestosis caused his total disability and significantly contributed to his death; and that his last injurious exposure occurred during his employment with R&W. Accordingly, the Commission awarded total disability compensation from 19 October 1999 through 16 October 2000 and death benefits under N.C. Gen. Stat. § 97-39. Defendants R&W and Travelers have appealed.

I

[1] Defendants first contend that the issue of death benefits was not properly before the Commission for determination. When a hearing was first requested, Mr. Payne was still alive. He died after the hearing, but prior to the entry of the deputy commissioner's opinion and award. On 28 February 2001, the deputy commissioner substituted Mrs. Payne, the administratrix for Mr. Payne's estate, as plaintiff and, on 6 September 2001, Mrs. Payne filed an amended Form 18B to assert a claim for death benefits.[1] The Full Commission concluded that as a result of the amended Form 18B, "the issue of decedent's eligibility for death benefits is before the Full Commission."

Defendants contend that the amended Form 18B and the substitution of Mrs. Payne as administratrix were insufficient to bring the issue of death benefits before the Commission. Defendants have not, however, cited any authority to support this contention. Under Rule 28(b)(6) of the Rules of Appellate Procedure, "[a]ssignments of error . . . in support of which no reason or argument is stated *or authority cited*, will be taken as abandoned." (Emphasis added.) We are not, therefore, free to revisit the Commission's determination that the amended Form 18B allowed the Commission to address the issue of death benefits.

[2] Defendants have, however, cited authority for their contention that they "were not afforded an opportunity to present evidence or investigate the matter in light of a claim for death benefits." Nonetheless, the record reveals that defendants questioned plaintiff's expert witness extensively regarding Mr. Payne's death and that plaintiff filed her amended Form 18B on or about 6 September 2001, prior to the closing of the record and more than two months before the

1. That amended Form 18B stated: "Plaintiff's asbestosis has either caused or significantly contributed to Decedent's death from emphysema and pulmonary fibrosis. Decedent died on October 16, 2000 as testified to by Dr. Stephen D. Proctor."

deputy commissioner filed her opinion and award. While on notice that plaintiff intended to pursue death benefits, defendants did not ask the deputy commissioner to extend the time for completing the record. Defendants apparently chose to rely upon their contention that the issue was not properly before the Commission.

After the deputy commissioner declined to address the issue of death benefits, plaintiff, in her Form 44 "Application for Review," specifically assigned as error the deputy commissioner's decision to "sustain[] the Defendant's objection on the issue of death benefits being a part of the claim since Plaintiff died subsequent to the hearing, since the death certificate was admitted into evidence and since Plaintiff filed an Amended I.C. Form 18B specifically alleging death benefits on account of his asbestosis." It is well established that "the full Commission has the duty and responsibility to decide all matters in controversy between the parties, and, if necessary, the full Commission must resolve matters in controversy even if those matters were not addressed by the deputy commissioner." *Crump v. Independence Nissan*, 112 N.C. App. 587, 589, 436 S.E.2d 589, 592 (1993) (internal citations omitted). Specifically, a "plaintiff, having appealed to the full Commission pursuant to G.S. 97-85 and having filed his Form 44 'Application for Review,' is entitled to have the full Commission respond to the questions directly raised by his appeal." *Vieregge v. N.C. State Univ.*, 105 N.C. App. 633, 639, 414 S.E.2d 771, 774 (1992).

Thus, once plaintiff included the issue of death benefits in her Form 44, defendants were on notice that the Full Commission would be required to address that issue. At that point, defendants had a strategic choice to make. They could (1) rest on their contention—accepted by the deputy commissioner—that the question of death benefits was not properly before the Commission or (2) request that the Full Commission allow them an opportunity to present evidence with respect to death benefits. "The Commission, when reviewing an award by a deputy commissioner, may receive additional evidence, even if it was not newly discovered evidence." *Cummins v. BCCI Constr. Enters.*, 149 N.C. App. 180, 183, 560 S.E.2d 369, 371-72, *disc. review denied*, 356 N.C. 611, 574 S.E.2d 678 (2002). If the Full Commission chose to address the issue of death benefits on the merits and determined that the transcript and record were insufficient to resolve that issue, then the Commission would have been required to "conduct its own hearing *or remand* the matter for further hearing." *Crump*, 112 N.C. App. at 589, 436 S.E.2d at 592.

Defendants, however, chose not to ask the Commission for the opportunity to present additional evidence. The record contains no request by defendants at any time (1) for an opportunity to supplement the record with medical evidence or other testimony regarding death benefits, (2) for a remand to the deputy commissioner for a hearing on that issue, or (3) for an evidentiary hearing before the Full Commission. In defendants' brief to the Full Commission, included in the record on appeal, defendants argue only (1) that the death benefits issue was not properly before the Commission because Mr. Payne died after the hearing before the deputy commissioner and (2) that plaintiff's evidence was insufficient to support an award of death benefits. Defendants' brief contains no suggestion that additional evidence should be taken on the death benefits issue.

The record thus reflects that defendants had notice that death benefits would be at issue at a time when they still could have offered evidence. Defendants have not established that they were denied an opportunity to be heard because they did not ask to present additional evidence. *See Cummins,* 149 N.C. App. at 185, 560 S.E.2d at 373 (defendants were not denied an opportunity to be heard when they had a doctor's records for two years and made no motion to depose that doctor until after the Full Commission entered its opinion and award). *Compare Allen v. K-Mart,* 137 N.C. App. 298, 302, 528 S.E.2d 60, 63-64 (2000) (defendants were denied an opportunity to be heard when the Full Commission admitted evidence of two independent medical examinations ("IMEs") submitted by plaintiff, but did not rule until after filing its opinion and award on defendants' five objections to the allowance of the IMEs, defendants' request to depose two physicians, and on defendants' six requests to have plaintiff submit to an IME by a physician of defendants' choosing). We, therefore, hold that defendants have not demonstrated that they were denied notice and an opportunity to be heard on the issue of death benefits.

## II

[3] Defendants argue that, even if the issue of death benefits was properly before the Commission, the claim was barred by N.C. Gen. Stat. § 97-61.6. Plaintiff argues in response that the statute violates the Equal Protection Clause and is, therefore, unconstitutional. The Full Commission awarded death benefits to plaintiff without specifically addressing the constitutionality of this statute. The parties agree, however, that if N.C. Gen. Stat. § 97-61.6 controls, then plaintiff is barred from seeking death benefits.

Paragraph 4 of N.C. Gen. Stat. § 97-61.6 sets out the time frame within which a claim for death benefits may be brought if the death resulted from asbestosis and silicosis:

> [S]hould death result from asbestosis or silicosis *within two years from the date of last exposure,* or should death result from asbestosis or silicosis, or from a secondary infection or diseases developing from asbestosis or silicosis *within 350 weeks from the date of last exposure* and while the employee is entitled to compensation for disablement due to asbestosis or silicosis, either partial or total, then in either of these events, the employer shall pay, or cause to be paid compensation in accordance with G.S. 97-38.

(Emphasis added.) In comparison, for occupational diseases other than asbestosis or silicosis, N.C. Gen. Stat. § 97-38 (2003) provides for payment of death benefits "[i]f death results proximately from a compensable injury or occupational disease and *within six years thereafter, or within two years of the final determination of disability,* whichever is later . . . ." (Emphasis added). Thus, for asbestosis and silicosis, the time limitation runs from the date of last exposure, while for all other occupational diseases, the focus is on the occurrence of the occupational disease and the final determination of disability.

Plaintiff contends that N.C. Gen. Stat. § 97-61.6 deprives those with asbestosis and silicosis of equal protection under the law. Plaintiff points out: "Victims of [asbestosis and silicosis], because of paragraph 4 of N.C. Gen. Stat. §97-61.6, are the only group of individuals suffering from occupational diseases whose claims must be diagnosed within a certain time period from date of last exposure; thus to preserve their future death benefits, these individuals would have to file claims prior to diagnosis or death." Plaintiff argues that there is no rational basis for providing a substantially shorter time frame for death benefit claims based on asbestosis or silicosis than death benefits claims based other latent occupational diseases.

The principles governing our decision in this case were set out by this Court—and approved by the North Carolina Supreme Court—in *Walters v. Algernon Blair,* 120 N.C. App. 398, 462 S.E.2d 232 (1995), *aff'd per curiam,* 344 N.C. 628, 476 S.E.2d 105 (1996), *cert. denied,* 520 U.S. 1196, 137 L. Ed. 2d 700, 117 S. Ct. 1551 (1997). *Walters* addressed the question whether N.C. Gen. Stat. § 97-63 (1991), "which treats employees with asbestosis and silicosis differently from

employees with other occupational diseases," violated the Equal Protection Clause. *Id.* at 400, 462 S.E.2d at 234.

N.C. Gen. Stat. § 97-63 provided that:

> Compensation shall not be payable for disability or death due to silicosis and/or asbestosis unless the employee shall have been exposed to the inhalation of dust of silica or silicates or asbestos dust in employment for a period of not less than two years in this State, *provided no part of such period of two years shall have been more than 10 years prior to the last exposure.*

(Emphasis added.) The Commission in *Walters* had denied the plaintiff's claim for benefits based on asbestosis because he had not been exposed to asbestos dust for a period of two years in North Carolina during the 10 years prior to his last exposure.

In *Walters*, the Court first determined that the case implicated the Equal Protection Clause because "[t]he plaintiff suffers from asbestosis, a specifically enumerated occupational disease, N.C.G.S. § 97-53(24) (1991), and is therefore situated similarly to all other persons with occupational diseases." *Walters*, 120 N.C. App. at 400, 462 S.E.2d at 234. Once the Equal Protection Clause came into play, the question before the Court became "whether N.C. Gen. Stat. § 97-63, which treats employees with asbestosis and silicosis differently from other occupational diseases, furthers some legitimate state interest." *Id.*

The defendants in *Walters* argued that N.C. Gen. Stat. § 97-63 prevented forum shopping and ensured that North Carolina employers are not burdened with paying workers' compensation claims for which they are not responsible. The Court, however, noted that "[a]lthough the prevention of forum shopping and the protection against claims for which the employer is not responsible are legitimate state interests and are served by N.C. Gen. Stat. § 97-63, the statute is grossly underinclusive in that it does not include all who are similarly situated." *Walters*, 120 N.C. App. at 401, 462 S.E.2d at 234. The Court explained: "There are . . . many other serious diseases, such as byssinosis, that develop over time and to which N.C. Gen. Stat. § 97-63 does not apply and the defendants have not asserted any justification for treating asbestosis and silicosis differently from these other serious diseases." *Id.* at 401, 462 S.E.2d at 233 (internal quotation marks omitted). The Court, therefore, concluded that "the constitutionality of N.C. Gen. Stat. § 97-63 cannot be sustained and this case must be remanded to the Commission." *Id.*

*Walters* establishes the applicability of the Equal Protection Clause to this case based on its holding that a plaintiff suffering from asbestosis is "situated similarly to all other persons with occupational diseases." *Id.* at 400, 462 S.E.2d at 234. Further, N.C. Gen. Stat. § 97-61.6 treats people suffering from asbestosis and silicosis differently than people suffering from other latent occupational diseases. *See Walters*, 120 N.C. App. at 400, 462 S.E.2d at 233-34 ("The principle of equal protection of the law is explicit in both the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Constitution of North Carolina and requires that all persons similarly situated be treated alike." (internal citations omitted)). As in *Walters*, the question before this Court is whether the distinction between employees suffering asbestosis or silicosis and employees suffering from other latent occupational diseases "bears a rational relationship to or furthers some legitimate state interest (minimum scrutiny)." *Id.*, 462 S.E.2d at 234.

In arguing that N.C. Gen. Stat. § 97-61.6 furthers a legitimate state interest, defendants contend that it is a statute of repose and thus advances the State's interest in finality. This contention begs the real question: what is the State's rationale for imposing a harsher statute of repose for claims involving asbestosis than for other latent occupational diseases, including other diseases resulting from exposure to asbestos? *See Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 434-35, 302 S.E.2d 868, 877 (1983) ("The equal protection clauses do not take from the state the power to classify persons or activities when there is a reasonable basis for such classification and for the consequent difference in treatment under the law." (internal quotation marks omitted)).

Defendants have presented no justification for the distinction made here between asbestosis/silicosis and other latent occupational diseases and we can conceive of none. As was true in *Walters*, the general goals articulated by defendants for the statute are legitimate state interests, but N.C. Gen. Stat. § 97-61.6—like the statute at issue in *Walters*—is "grossly underinclusive in that it does not include all who are similarly situated." *Walters*, 120 N.C. App. at 401, 462 S.E.2d at 234.

While defendants point to asbestosis as "unique" because of its incurable and latent nature, our Supreme Court has already observed:

A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive

lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. . . . The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent. . . . Even with diseases which might be caused by a single harmful exposure such as, for example, hepatitis, it is ordinarily impossible to determine which of many possible exposures in fact caused the disease. . . . Both the Court and the legislature have long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods.

*Wilder v. Amatex Corp.*, 314 N.C. 550, 557-58, 336 S.E.2d 66, 70-71 (1985). Thus, many occupational diseases, because of their latency or need for repeated exposure to hazardous conditions, give rise to concerns about "finality." Indeed, paragraph 4 of N.C. Gen. Stat. § 97-61.6 does not even encompass other asbestos-related deaths, such as deaths from mesothelioma, a terminal asbestos cancer caused by exposure to asbestos, but not secondary to asbestosis. *See Robbins v. Wake County Bd. of Educ.*, 151 N.C. App. 518, 566 S.E.2d 139 (2002) (addressing claim based on mesothelioma arising out of exposure to asbestos).

As this Court has since explained, in discussing the application of the Equal Protection Clause, "[t]he statute at issue in *Walters* imposed upon claimants suffering from asbestosis or silicosis an additional burden for recovery not so imposed on claimants with other occupational diseases. The purposes for which the statute was enacted were equally applicable to all claimants suffering from occupational diseases." *Jones v. Weyerhaeuser Co.*, 141 N.C. App. 482, 488, 539 S.E.2d 380, 383-84 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 525, 549 S.E.2d 858 (2001). This analysis is equally true in this case. N.C. Gen. Stat. § 97-61.6 imposes an additional burden for recovery—a shorter time frame for death benefits claims—for asbestosis or silicosis when no rational basis exists for treating such occupational diseases differently from other latent occupational diseases.

Because defendant has failed to suggest a justification for treating asbestosis differently than other latent occupational diseases, such as byssinosis, we hold that the time limitation in the fourth paragraph of N.C. Gen. Stat. § 97-61.6 violates the Equal Protection Clause under the rational basis test. Since the parties agree that plaintiff's claim was within the time limitation applicable to other occupational

diseases, N.C. Gen. Stat. § 97-38, we uphold the Commission's determination that plaintiff's claim for death benefits was timely filed.

## III

[4] Defendants R&W and Travelers next contend that the Commission's determination that Mr. Payne's asbestosis caused or significantly contributed to his disability and death is not supported by the evidence. In reviewing decisions by the Commission, "we are limited to the consideration of two questions: (1) whether the Full Commission's findings of fact are supported by competent evidence; and (2) whether its conclusions of law are supported by those findings." *Calloway v. Mem'l Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). If the findings are supported by any competent evidence, they are conclusive on appeal, even if other evidence would support contrary findings. *Id.* Additionally, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

On this issue, defendants first contend that the evidence does not support a finding that Mr. Payne suffered asbestosis as defined by N.C. Gen. Stat. § 97-62 (2003) (defining "asbestosis" as "a characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust"). In support of this argument, defendants quote at length from Commissioner Sellers' dissent below, which purports to set out the definition of asbestosis developed by the American Thoracic Society and then applies that test to the evidence presented in this case. Significantly, defendants did not present expert witness testimony regarding the American Thoracic Society standard or the application of that standard to Mr. Payne.[2] Unquestionably, the standard by which asbestosis should be diagnosed and application of that standard in a specific case are questions requiring expert testimony. *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (requiring expert testimony "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen"). The argument of defendants that Mr. Payne's condition does not meet the American Thoracic Society standard—as adopted by the dissenting Commissioner below—is unsupported by

2. Defendants' sole expert witness was Dr. Michael Alexander, a radiologist, who acknowledged that he was not a diagnosing physician for asbestosis and could not refute the diagnosis of a pulmonologist such as plaintiff's expert, Dr. Stephen Proctor.

any evidence in the record. As the Supreme Court recently reiterated by adopting Judge Steelman's dissenting opinion, "It is not the role of the Commission to render expert opinions." *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 819, 600 S.E.2d 501, 506 (2004) (Steelman, J., dissenting), *rev'd per curiam*, 359 N.C. 313, 608 S.E.2d 755 (2005).

This Court has previously rejected bare reliance "on a statement from the American Thoracic Society and other medical literature" as support for overturning the Commission's determination that a plaintiff had asbestosis as defined in N.C. Gen. Stat. § 97-62. *Austin v. Cont'l Gen. Tire*, 141 N.C. App. 397, 402, 540 S.E.2d 824, 828 (2000), *rev'd on other grounds*, 354 N.C. 344, 553 S.E.2d 680 (2001). Instead, after observing that the Commission made extensive findings regarding the medical evidence and expert testimony, this Court concluded that "[a] review of the deposition transcripts and medical evidence presented to the Commission shows plenary evidence to support the Commission's findings of fact. Accordingly, those findings are conclusive on appeal." *Id.* at 403, 540 S.E.2d at 828.

Likewise, in this case, the Commission extensively reviewed the medical evidence, including the diagnosis of Dr. Proctor that Mr. Payne suffered from emphysema and "asbestosis and pleural plaques related to asbestos exposure"; the opinion of Dr. Fred Dula, a NIOSH certified B-reader, that Mr. Payne's chest films were "entirely consistent with asbestosis"; and the opinion of Dr. Richard Bernstein, a NIOSH certified B-reader, that Mr. Payne's x-rays showed "[p]leural disease consistent with long standing asbestos exposure." While the Commission noted the testimony of Dr. Michael Alexander, also a certified B-reader, that any pulmonary impairment was caused by emphysema, the Commission concluded: "Given that Dr. Alexander is not a pulmonologist, did not examine plaintiff personally and is not a diagnosing physician, the Full Commission gives greater weight to the diagnostic conclusions of Dr. Proctor and the x-ray and CT interpretations of Drs. Dula and Bernstein."

While defendants argue with Dr. Proctor's diagnosis, they present questions of credibility and weight that the Commission was entitled to resolve in favor of plaintiff. An appellate court reviewing a workers' compensation claim " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Rather, the Court's duty goes no further than to determine " 'whether the record contains

any evidence tending to support the finding.' " *Id.* (quoting *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274). Because the Commission's finding that Mr. Payne suffered from asbestosis is supported by competent evidence, it is binding on appeal.

**[5]** Defendants next challenge the Commission's finding that Mr. Payne's asbestosis either caused or significantly contributed to his disability and his subsequent death. Defendants argue that there is no competent evidence that asbestosis caused plaintiff's death, and any findings made by the Commission were based upon pure speculation. To the contrary, Dr. Proctor, a specialist in pulmonary medicine, testified in his deposition to a reasonable degree of medical certainty that Mr. Payne's asbestosis significantly contributed to his death. Further, Dr. Proctor testified that Mr. Payne's asbestosis also severely impaired his ability to conduct daily activities and that he would have been unable, because of the asbestosis, to maintain employment, "[p]articularly if there were any—if there was any activity involved, he would not be able to do that." While defendants point to the fact that Mr. Payne had originally stopped working because of his back injury, both Mr. Payne and his wife testified that he subsequently ceased being disabled as a result of his back problem. It was for the Full Commission to decide whether that testimony was credible. Because there is evidence in the record that supports the Commission's finding that Mr. Payne's asbestosis caused his disability and significantly contributed to his death, these assignments of error are overruled.

## IV

**[6]** Finally, defendants R&W and Travelers assign error to the Full Commission's finding that "[d]ecedent's last injurious exposure to asbestos occurred during his employment with defendant-employer Ross & Witmer." According to N.C. Gen. Stat. § 97-57 (2003), "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease" shall be liable. Under the statute, with respect to asbestosis or silicosis, the worker must have been exposed for 30 working days within seven consecutive months in order for the exposure to be deemed injurious. *Id.* Our review is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).

Defendants argue first that plaintiff "provided no scientific evidence tending to show the presence of asbestosis [sic] in any

environment in which he worked at Ross & Witmer or, for that fact, any other employer." This Court has squarely held that "there is no need for such expert testimony." *Vaughn v. Insulating Servs.*, 165 N.C. App. 469, 473, 598 S.E.2d 629, 631, *disc. review denied*, 359 N.C. 75, 605 S.E.2d 150 (2004). *See also Abernathy v. Sandoz Chems./Clariant Corp.*, 151 N.C. App. 252, 259, 565 S.E.2d 218, 223, *cert. denied*, 356 N.C. 432, 572 S.E.2d 421 (2002) (holding that scientific evidence was not required regarding the extent of exposure to asbestos when deciding where the plaintiff was last injuriously exposed under N.C. Gen. Stat. § 97-57).

In *Abernathy*, this Court held that "competent evidence" existed to support a finding of liability under N.C. Gen. Stat. § 97-57 when (1) the plaintiff testified "that he worked around asbestos in one way or another up until the day he retired" and that he worked directly with asbestos approximately four days a week from 1991 to 1993, (2) another employee testified that the plaintiff would take down pipe containing asbestos two or three times a week, and (3) the yard where the plaintiff worked "was very dusty with levels of asbestos present." *Abernathy*, 151 N.C. App. at 259, 565 S.E.2d at 223. Plaintiff offered comparable evidence in this case.

Mr. Payne testified that as part of R&W's apartment complex project, he worked directly with and supervised people cutting and installing asbestos wallboard and asbestos cloth. Mr. Payne was either cutting or standing close to people cutting asbestos boards and cloth "roughly twice a week." Don Sloop, Mr. Payne's supervisor at the Barcelona Apartments Construction Project, testified that Mr. Payne would have been exposed to asbestos material any time he was on the job site. Mr. Payne specifically testified that any cutting of the asbestos board would cause asbestos dust to cover his clothes, face, and hair and he would breathe it in. Under *Abernathy*, this evidence is sufficient to support the Commission's finding that Mr. Payne's last injurious exposure to asbestos occurred during his employment with R&W.

For this reason and the reasons above, we affirm the Commission's opinion and award directing defendants R&W and Travelers to pay total disability and death benefits to plaintiff.

Affirmed.

Judges TIMMONS-GOODSON and McCULLOUGH concur.