MURPHY, Judge.
 

 *182
 
 Individuals with latent health conditions are not members of a suspect class, and access to a claim against the North Carolina Insurance Guaranty Association does not affect a fundamental right. The distinctions imposed by statute are subject to minimum scrutiny under the Equal Protection Clause and do not violate the North Carolina or United States Constitutions, as they further legitimate State interests.
 

 Thelma Bonner Booth ("Plaintiff"), as the administratrix of the estate of Henry Hunter Booth, Jr. ("Booth"), appeals the Full North Carolina Industrial Commission's Opinion and Award certifying a constitutional question to this Court. On appeal, Plaintiff asserts the following arguments: (1) the "bar date" provision in N.C.G.S. § 58-48-35(a)(1) (2015) violates Plaintiff's constitutional rights to equal protection and due process; and (2) the statute of repose in N.C.G.S. § 58-48-100(a) (2015) deviates from the purposes of the Workers' Compensation Act and is also unconstitutional. After careful review, we hold both provisions
 
 *183
 
 do not violate the North Carolina or United States Constitutions and remand to the Full Commission for further proceedings.
 

 I. Background
 

 Booth worked at Hackney Industries, Inc. from 1967 to 1989. From September 1988 to September 1990, Hackney was insured by the Home Insurance Company. On 13 June 2003, a court in New Hampshire filed an order of liquidation for Home Insurance Company and declared the company to be insolvent. The same court ordered all claims against the company to be filed with the "liquidator" by 13 June 2004, the bar date.
 

 On 23 June 2008, Booth was diagnosed with lung cancer. On 27 April 2009, Booth passed away. On 16 November 2009, a doctor opined Booth "developed welding related conditions including lung fibrosis and adenocarcinoma of the lung which was caused and/or contributed to by his exposure to welding rod fumes."
 

 On 1 December 2009, Plaintiff completed a Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or Dependent). On 17 June 2013, the North Carolina Insurance Guaranty Association ("Defendant") filed a Form 61 (Denial of Workers' Compensation Claim) for the Home Insurance Company, because Home Insurance was an insolvent insurance carrier. In the Form 61, Defendant denied that it owed any obligation regarding Plaintiff's claim because the claim was not proper under N.C.G.S. §§ 58-48-35(a)(1) and 58-48-1. On 20 October 2015, Defendant filed a motion to dismiss Plaintiff's claim, arguing the bar date and the statute of repose mandated dismissal of Plaintiff's claim against Defendant.
 
 [1]
 

 On 2 December 2015, Deputy Commissioner Thomas H. Perlungher denied Defendant's
 
 *661
 
 motion to dismiss. On 5 January 2016, Defendant appealed to the Full Commission. On 7 December 2016, the Full Commission certified the following question to this Court, pursuant to N.C.G.S. § 97-86 (2015):
 

 Do the provisions of
 
 N.C. Gen. Stat. §§ 58-48-35
 
 (a)(1) and 58-48-100(a), as applied in workers' compensation cases involving occupational diseases which, due to the very nature of the disease, develop many years after the last injurious exposure, violate the guarantees of due process
 
 *184
 
 and equal protection of law under Article I, Section 19 of the Constitution of the State of North Carolina and/or under the 14
 
 th
 
 Amendment to the United States Constitution to claimants who were injuriously exposed prior to the bar date but whose occupational disease did not develop until after the bar date and/or after the last date allowed by the statute of repose?
 

 Plaintiff filed timely notice of appeal.
 

 II. Jurisdiction
 

 Under N.C.G.S. § 97-86, "[t]he Industrial Commission ... may certify questions of law to the Court of Appeals for decision and determination by the Court[,]" prior to entering a final opinion and award.
 

 Id.
 

 On 7 December 2016, the Commission certified a constitutional question to this Court, pursuant to section 97-86. Thus, we have jurisdiction over Plaintiff's appeal, even though the Opinion and Award from which Plaintiff appeals is interlocutory.
 

 III. Standard of Review and Level of Scrutiny
 

 This Court reviews alleged violations of constitutional rights de novo.
 
 Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.
 
 ,
 
 353 N.C. 343
 
 , 348,
 
 543 S.E.2d 844
 
 , 848 (2001) (citations omitted) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated."). Plaintiff contends our Court should apply the highest level of scrutiny, strict scrutiny, and argues that the bar date and the statute of repose affect her fundamental right "to remedies provided by the Workers' Compensation Act[.]" However, the challenged provisions do not affect a fundamental right or a suspect class.
 
 See
 

 Payne v. Charlotte Heating & Air Conditioning
 
 ,
 
 172 N.C. App. 496
 
 , 505,
 
 616 S.E.2d 356
 
 , 362 (2005) (citation omitted). Therefore, the lowest level of scrutiny, minimum scrutiny, applies to the provisions in the workers' compensation scheme.
 

 Id.
 

 at 505
 
 ,
 
 616 S.E.2d at 362
 
 (citation omitted). Under this level of scrutiny:
 

 "The constitutional safeguard (of equal protection) is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it."
 

 *185
 

 Roberts v. Durham Cty. Hosp. Corp.
 
 ,
 
 56 N.C. App. 533
 
 , 539,
 
 289 S.E.2d 875
 
 , 879 (1982) (quoting
 
 McGowan v. Maryland
 
 ,
 
 366 U.S. 420
 
 , 425-26,
 
 81 S.Ct. 1153
 
 ,
 
 6 L.Ed.2d 393
 
 , 399 (1961) ). "[I]t is only necessary to show that the classification created by the statute bears a rational relationship to or furthers some legitimate state interest."
 
 Walters v. Blair
 
 ,
 
 120 N.C. App. 398
 
 , 400,
 
 462 S.E.2d 232
 
 , 234 (1995) (citation omitted). Thus, we now review the challenged provisions under minimum scrutiny.
 

 IV. Analysis
 

 A review of the formation of the North Carolina Insurance Guaranty Association ("NCIGA") is pertinent to our analysis. In 1971, the NCIGA was created by statute, N.C.G.S. § 58-48-1
 
 et seq.
 
 , to maintain accounts for the payment of various types of claims on behalf of insolvent insurers. 1971 N.C. Sess. Laws ch. 670. The purpose of the NCIGA is:
 

 to provide a mechanism for the payment of
 
 covered claims
 
 under certain insurance policies, to avoid excessive delay in payment, and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to
 
 *662
 
 assess the cost of such protection among insurers.
 

 N.C.G.S. § 58-48-5 (2015) (emphasis added).
 

 The NCIGA consists of "members", which are all insurance companies licensed to do business in the State. N.C.G.S. § 58-48-20(6) (2015). Prior to 1993, the NCIGA was only responsible for various types of insurance company insolvencies, but not workers' compensation.
 
 See
 
 1991 N.C. Sess. Laws ch. 802. In 1992, the General Assembly enacted legislation amending the Insurance Guaranty Association Act and the Worker's Compensation Act to place workers' compensation claims within the scope and administration of NCIGA.
 

 Id.
 

 Starting on 1 January 1993, the NCIGA became responsible for workers' compensation claims involving insolvent carriers.
 

 Id.
 

 We now turn to Plaintiff's challenges to the bar date and the statute of repose.
 

 A. N.C.G.S. § 58-48-35(a)(1) Bar Date
 

 Plaintiff first argues the bar date provision in N.C.G.S. § 58-48-35(a)(1) violates her constitutional right to equal protection.
 
 [2]
 
 We disagree.
 

 *186
 
 N.C.G.S. § 58-48-35(a)(1) states:
 

 In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises. Notwithstanding any other provision of this Article,
 
 a covered claim shall not include any claim filed with the Association after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer.
 

 Id.
 

 (emphasis added). Thus, in this case, to be a "covered claim," the claim must have been filed against Defendant (as it stands in the place of the insolvent Home Insurance Company) by 13 June 2004, the date set by the New Hampshire court. All parties agree Plaintiff did not file her claim by 13 June 2004.
 

 We conclude the bar date passes constitutional muster, as there is a legitimate State interest-indeed, several legitimate State interests-furthered by the distinction made in N.C.G.S. § 58-48-35(a)(1). As stated in Plaintiff's brief, the bar date "is a method to ensure that the NCIGA has the opportunity to recover any sums expended on covered claims. It is to ensure some measure of recovery from the bankruptcy estate solely for the benefit of the NCIGA."
 
 [3]
 
 Additionally, Defendant presents the following,
 
 inter alia
 
 , as legitimate policy reasons for the distinction, all of which we accept and conclude as individually sufficient for the statute to survive minimum scrutiny:
 

 1. As a State that depends more heavily on foreign rather than domestic insurers for purposes of workers' compensation insurance, conforming to the bar date provision of the [National Association of Insurance Commissioners] Model [Post-Assessment Guaranty] Act promoted the State's and the public's interest in a more uniform,
 
 *187
 
 national approach to insolvencies of workers' compensation carriers;
 

 2. As a State that finances the recovery of un-recouped assessments of the NCIGA via offsets against premium taxes pursuant to
 
 N.C. Gen. Stat. § 105-228
 
 .5A, the bar date provision promotes the interests of the State and the public by establishing a
 
 *663
 
 date on which future liabilities for claims, and hence tax credits, are capped;
 

 3. Acting together with other provisions of the Guaranty Act, such as the "net worth" recovery rights under
 
 N.C. Gen. Stat. § 58-48-50
 
 (a1) and the "non-duplication of recovery" provisions of
 
 N.C. Gen. Stat. § 58-48-55
 
 , the bar date serves the State's and the public's interests by promoting the marshalling of the insolvent insurer's assets to finance the expedited payments and other protections provided with respect to the claims of "claimants" made against a "policyholder" or other insureds of the insolvent insurer;
 

 ....
 

 [4]. The bar date promotes the State's and the public's interest in reducing the risk of delay, suspension, or partial payment of "covered claims" that can result from exceeding the assessment capacity of the NCIGA during a period of multiple insolvencies or large workers' compensation insurer insolvencies.
 

 Additionally, in its
 
 amicus curiae
 
 brief, the National Conference of Insurance Guaranty Funds identifies the following,
 
 inter alia
 
 , as legitimate reasons for the bar date:
 

 (1) promote fiscal integrity of NCIGA by limiting claims against NCIGA, thereby preserving NCIGA's limited resources for claimants and policyholders; (2) limit the burden on the public which provides funds for NCIGA; ... ( [3] ) provide finality to the insurer liquidation process; and ( [4] ) preserve the assets of the insolvent insurer to provide funding to NCIGA.
 

 Moreover, the State has an interest in preserving the integrity of the Guaranty Fund.
 

 We further note "classifications are largely matters of legislative judgment."
 

 *188
 

 Lamb v. Wedgewood South Corp.
 
 ,
 
 308 N.C. 419
 
 , 435,
 
 302 S.E.2d 868
 
 , 877 (1983) (citation omitted). Indeed, "a court may not substitute its judgment of what is reasonable for that of the legislative body, particularly when the reasonableness of a particular classification is fairly debatable."
 
 A-S-P Assocs. v. City of Raleigh
 
 ,
 
 298 N.C. 207
 
 , 226,
 
 258 S.E.2d 444
 
 , 456 (1979) (citations omitted). With these principles in mind, we conclude the bar date provision does not violate Plaintiff's constitutional right to equal protection.
 

 B. N.C.G.S. § 58-48-100(a) Statute of Repose
 

 Plaintiff next argues the statute of repose in N.C.G.S. § 58-48-100(a) is unconstitutional and deviates from the purpose of the Workers' Compensation Act. We disagree.
 

 A statute of repose "constitutes a substantive definition of, rather than a procedural limitation on, rights."
 
 Lamb
 
 ,
 
 308 N.C. at 426
 
 ,
 
 302 S.E.2d at
 
 872 (citing
 
 Bolick v. American Barmag Corp.
 
 ,
 
 306 N.C. 364
 
 ,
 
 293 S.E.2d 415
 
 (1982) ). As our State Supreme Court did in
 
 Lamb
 
 , we keep two principles in mind when reviewing the challenged statute of repose: First, "there is a presumption in favor of constitutionality; reasonable doubts must be resolved in favor of sustaining the act."
 

 Id.
 

 at 433
 
 ,
 
 302 S.E.2d at 876
 
 (citations omitted). Second, "so long as an act is not forbidden, the wisdom of the enactment is exclusively a legislative decision."
 
 Id.
 
 at 433,
 
 302 S.E.2d at 876
 
 (citation omitted).
 
 See also
 

 Rhyne v. K-Mart Corp.
 
 ,
 
 358 N.C. 160
 
 , 170-71,
 
 594 S.E.2d 1
 
 , 9 (2004) (citation omitted) (explaining it is within the power of the legislature to establish statutes of repose, as long as the statutes do not violate constitutional rights).
 

 The challenged statute of repose states:
 

 Notwithstanding any other provision of law, a covered claim with respect to which settlement is not effected with the Association, or suit is not instituted against the insured of an insolvent insurer or the Association, within five years after the date of entry of the order by a court of competent jurisdiction determining the insurer to be insolvent, shall thenceforth be barred forever as a claim against the Association.
 

 N.C.G.S. § 58-48-100(a).
 

 Here, the insurer, Home Insurance Company, was declared to be insolvent on 13 June 2003. Thus, to not violate the statute of repose, Plaintiff's claim would have to have been filed by 13 June 2008.
 

 Id.
 

 However, Booth was diagnosed and passed away after the tolling of the statute of repose.
 

 *664
 

 *189
 
 Plaintiff presents the same constitutional arguments under this analysis as she did for the bar date. As we held
 
 supra
 
 , the State has a legitimate interest in protecting the integrity of the Guaranty Fund, and the other interests listed above. These interests are furthered by the statute of repose. Accordingly, we hold the statute of repose is not in violation of the North Carolina or United States Constitutions.
 

 Although Plaintiff asks us to determine whether this statute of repose "deviates from the purposes of the Act", we cannot answer that question in this interlocutory appeal.
 
 [4]
 
 The certified question to this Court under N.C.G.S. § 97-86 is limited to whether the bar date provision and the statute of repose violate either the North Carolina or United States Constitutions, not whether the statute of repose deviates from the purposes of the Act. Thus, we need not address that argument.
 

 V. Conclusion
 

 In conclusion, we hold the bar date in N.C.G.S. § 58-48-35(a)(1) and the statute of repose in N.C.G.S. § 58-48-100(a) do not violate either the North Carolina or United States Constitutions, either facially or as applied to Plaintiff. Accordingly, we remand to the Full Commission for further proceedings consistent with this opinion.
 

 REMANDED.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 Defendant also filed another motion to dismiss, but the arguments contained therein are not at issue in this appeal.
 

 [2]
 

 In Plaintiff's brief, she offers only one paragraph for her argument that the bar date provision violates her fundamental right to due process. Plaintiff cites no case law in this paragraph. It is not our duty "to supplement an appellant's brief with legal authority[.]"
 
 Eaton v. Campbell
 
 ,
 
 220 N.C. App. 521
 
 , 522,
 
 725 S.E.2d 893
 
 , 894 (2012) (quotation marks and citations omitted). This argument was not properly presented to our Court and is "taken as abandoned." N.C.R. App. P. 28(b)(6) (2017) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated will be taken as abandoned.").
 

 [3]
 

 Our Court in
 
 Payne
 
 held the State's interest in finality failed to pass minimum scrutiny when the statutes treated claims for asbestosis harsher than other latent occupational diseases.
 
 172 N.C. App. at 505-06
 
 ,
 
 616 S.E.2d at 362-63
 
 . However, the same issue is not at hand here. The bar provision does not set a different bar date for only some occupational diseases. Indeed, the bar date does not create a distinction between different diseases or injuries at all. The only "distinction" is between claims filed before the bar date and claims filed after the bar date.
 

 [4]
 

 In support of her arguments, Plaintiff cites to
 
 Wilder v. Amatex Corp.
 
 ,
 
 314 N.C. 550
 
 ,
 
 336 S.E.2d 66
 
 (1985). In
 
 Wilder
 
 , our State Supreme Court analyzed a statute of repose to determine whether the statute covered claims arising out of disease, when it did not explicitly state so.
 
 Id.
 
 at 554-63,
 
 336 S.E.2d at 68-73
 
 .
 
 Wilder
 
 did not involve a question of constitutionality of the statute. No party in the case at hand argues the statute of repose does not govern latent diseases, from which Booth allegedly suffered. Instead, the question before the Court is whether the statute is unconstitutional. Accordingly, contrary to Plaintiff's arguments,
 
 Wilder
 
 does not demand a different result.